No. 15,268.

International Trust Company, Executor *v.* Liebhardt.
(139 P. [2d] 264)

Decided June 21, 1943.

Messrs. BARTELS, BLOOD & BANCROFT, for plaintiff in error.

Messrs. VAN CISE, ROBINSON & CHARLTON, Mr. J. E. ROBINSON, Mr. HORACE N. HAWKINS, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

JANUARY 4, 1937, Harry G. Liebhardt and Edith Liebhardt, then husband and wife, entered into a separation agreement under the terms of which the husband was to pay the wife $450 a month so long as she lived, provided, however, that if at any future time the parties were divorced and the wife remarried such payments were to be discontinued. The following day Mrs. Liebhardt filed a divorce complaint in the district court of the City and County of Denver, and on August 19, 1937, the interlocutory decree of divorce entered February 18, 1937, was made final. The aforesaid agreement of January 4, 1937 was incorporated in the decree and adopted by the court. November 4, 1941, Harry G. Liebhardt died, having faithfully performed all of the terms and conditions encumbent upon him under

the terms of the divorce decree and the separation agreement. March 21, 1942, the plaintiff in error, as executor of the estate of Harry G. Liebhardt, deceased, filed its petition in the divorce proceeding in the district court of the City and County of Denver, praying, inter alia, that that portion of the divorce decree ordering the payment of $450 per month to defendant in error be either cancelled or modified as of the date of the death of Harry G. Liebhardt.

To review a judgment of the district court, adverse to plaintiff in error, by which it was held that the petition set up no facts justifying the relief prayed for, the case is brought here by writ of error.

The parties herein appear in the same order as in the trial court and are hereinafter designated as there.

The judgment of the trial court followed the theory that the $450 a month payment to be made to Edith Liebhardt was founded on the contract of January 4, 1937, and that the court had no right or power to alter this provision. The contention of the executor in the trial court, as here, is that the $450 monthly payments are alimony, and, being alimony, the court entering the order had continuing jurisdiction over the question of such payments and the power to modify same as changed circumstances might warrant.

The case, therefore, requires an answer to the question as to whether alimony was in fact awarded to the wife, Edith Liebhardt, in the divorce action. Her position is that her right under the agreement to the $450 monthly payment for life and so long as she remains unmarried was not altered by the decree of divorce in her favor. The contention of the executor is that the contract was adopted by the court and embodied in the decree and so became merged in the decree; that the rights and obligations of the Liebhardts are founded entirely on the divorce decree, and that from the date of that decree the $450 per month payments are in

effect and in fact alimony payments, and are therefore subject to subsequent modification upon proper showing.

In support of defendant's position counsel call particular attention to the following clauses of the contract: "And whereas, it is the desire of the first party [husband] to make provision for the support and maintenance of the second party [wife] during her lifetime while she is living separate and apart from him, and while she is unmarried to any other than to him, and this regardless of whether a divorce action is or is not instituted;

"And whereas, it is further the desire and wish of both of the parties hereto that if any divorce action is instituted by either party hereto there be no controversy in court concerning the matter of either temporary or permanent alimony or attorney's fees in connection with any such divorce action or actions;

"And whereas, it is the desire of both parties hereto that the further matters hereinafter set forth as well as those hereinbefore mentioned shall be forever settled, concluded and determined by an agreement in writing between the parties hereto; * * * "

"[paragraph] 5. The first party further agrees and binds himself to pay to the second party the sum of Four Hundred Fifty Dollars ($450.00) in cash on the signing of this instrument, and he binds himself, his heirs, executors and administrators to pay to the second party the same amount in cash in each and every calendar month hereafter, such payments to be made on or before the 10th day of each calendar month, said payments to continue, however, only as long as the second party may be living, provided, however, that if at any time in the future a divorce is granted between the parties hereto, and the second party remarries, then and in that event no payment is to be made to the second party after the calendar month in which she remarries."

Paragraph 6 of the agreement contains a mutual waiver of the right to inherit from each other; also mutual release of any right or claim to each others property. The sentence containing Edith Liebhardt's waiver and release concludes with the following provision:

"* * * and agrees that she will make no claim of any kind to any of the property of which he may die the owner, or any widow's allowance, and will claim nothing whatever from his estate in the event of his death, save and except that should the second party survive the first party and has not at that time remarried, she shall have the right to receive and there shall be paid to her from first party's estate the said monthly amount of $450.00 while she lives and has not remarried."

"[paragraph] 7. It is further agreed that in the event any divorce action is instituted, the agreement hereinbefore contained with reference to the first party paying the second party the sum of $450.00 per month shall be and it is hereby accepted by the second party in lieu of any and all claim which might be made for alimony, and in lieu of any and all claim that might be made for attorney's fees or expense money in said litigation, and she shall have the right in the event of a divorce action being brought by either party to present this written agreement to the court and have an order made by the court at any time in said litigation, directing and commanding that the terms of this written agreement be carried out and complied with, and may have this contract embodied into any decree or order that may be entered in such divorce action."

"[paragraph] 9. It is further agreed that nothing herein contained shall in any way prevent either party from instituting or defending any divorce action which may hereafter be brought, and whether a divorce is or is not applied for or granted, the agreement hereinbefore set forth shall continue to remain and be in full force and effect."

Counsel for plaintiff call particular attention to the following recitals in the interlocutory decree:

"* * * that the parties hereto by agreement in writing dated the 4th day of January, 1937, and signed and executed by both of said parties, have adjusted all property rights of every character between them, and have made certain provisions for the support of plaintiff as in said written agreement provided, and that said written agreement is in words and figures following, to wit: [then follows the complete contract]. That the said written agreement is reasonable, fair and just in every respect and in each and every of its terms, and that it is for the best interest of the parties; * * *"

"It is further ordered, adjudged and decreed that all and singular the terms of said written agreement between plaintiff and defendant hereinbefore set forth are adopted by the court, and the plaintiff and the defendant are hereby ordered and directed to comply with each and every of the terms of said written agreement, and the defendant is ordered and directed to pay on or before the 10th day of each calendar month to the plaintiff the sums of money agreed by him in said written agreement to be paid."

"It is further ordered, adjudged and decreed that the court retains jurisdiction of this cause to render such further order, judgment or decree after said period of six months has expired as to the court may then seem just and proper and in accordance with law."

The final decree of divorce, being in the usual form, concludes with the words: "* * * that said interlocutory decree has become and now is a final decree of divorce, made and entered upon the terms and conditions contained in the interlocutory decree, or any modification or change thereof subsequently made by the court." Counsel for plaintiff also call attention to section 8, chapter 56, volume 2, '35 C.S.A., the pertinent portion of which reads as follows: "And when a divorce has

been granted the court may make such order and decree providing for the payment of alimony and maintenance of the wife * * * as may be reasonable and just and may require security to be given for the payment of such alimony, or enforce the payment thereof by execution or imprisonment, or may decree a division of property."

Plaintiff's counsel argue that alimony is a technical word used in divorce actions meaning maintenance and support granted by the court for the wife; that the preamble of the contract itself expresses the desire of the husband to make provision for the support and maintenance of the wife; that the monthly payments later provided for are the means of providing that maintenance and support; that the decree of divorce recites that the parties to the contract have made provisions for the support of the wife as in said agreement provided; the decree then recites that the written agreement is reasonable, fair and just in every respect and for the best interests of the parties, which is a usual recital in orders decreeing alimony, and that when the contract thus became embodied in the court decree it was merged therein and the decree, thus providing for maintenance of the wife, became in effect a decree for alimony; the divorce decree contained the provision that the court retained jurisdiction of the case and therefore in the future it could modify any payments made for alimony.

We do not agree with this position for the following reasons: The statute above quoted, section 8, chapter 56, volume 2, '35 C.S.A., does not compel a court to grant alimony in a divorce case—it is merely permissive. As is well known, in many divorce decrees there is no provision for alimony. Alimony may be waived. The right to seek alimony may be surrendered for a valuable consideration. We believe that Edith Liebhardt, in the seventh paragraph of her contract, gave

up forever her right to ask for alimony when she specifically agreed that in the event any divorce action is instituted she would accept the $450 per month payment for life "in lieu of any and all claim which might be made for alimony, and in lieu of any and all claim that might be made for attorney's fees or expense money in said litigation." No showing has been made that she has not lived up to her part of the agreement. Realizing that alimony was something that could change in the course of time with changed circumstances, and both wishing to avoid the necessity of going to court— the one person to demand and the other to resist changes in the amount of alimony—they agreed in a changing world to make their provisions for marital separation as permanent and nonlitigious as possible by the husband agreeing to pay to the wife as long as she should live and remain unmarried $450 a month, which the wife in turn agreed to accept. This contract was approved and adopted by the court as fair and reasonable. We do not believe that this action of the court worked some sudden transformation—similar to the alchemists theory of transmutation of elements— and changed the agreement into a decree for the payment of alimony. Alimony is by its very nature subject to change with changing circumstances. The contract provided for the payment of an *unchanging* monthly amount and the order of the court was that the husband make the payments as provided in the contract.

Counsel for plaintiff, in their reply brief, page 20, make this statement: "If the defendant in error was claiming more than $450.00 a month, or had asked the court to award her more than that sum the agreement in paragraph 7 (folio 25) of the decree could have been pleaded in defense of such a demand, and, in the light of the context, that appears to be the purpose of the first part of paragraph 7 (folio 25) of the contract and decree and fully explains the meaning of the words

'in lieu of'." From this statement we must assume that counsel's position is that, although the divorce court has the right in this case to modify the terms of the payments to be made to Edith Liebhardt, if this paragraph 7 is properly pleaded and set up in the proceedings then the $450 monthly payment becomes a maximum or ceiling beyond which the court cannot go. If we proceed on this theory, then the only way the court could modify the payments would be downward. We cannot agree with this interpretation. Mutuality appears throughout this contract. There are mutual concessions and mutual benefits. If, as counsel seem to contend, $450 is the maximum monthly payment that the court could grant, it seems inescapable after reading the other provisions in the contract that it is also the minimum. In other words, the $450 monthly payment is a fixed amount and not subject to modification. The agreement as adopted by the court and incorporated in the decree is in the nature of a life annuity, payable in monthly instalments, subject to earlier termination on the marriage of the annuitant.

At the time of the execution of this agreement and at the time the decree of divorce was granted, there was no Colorado case, and there is none now, definitely holding that a court has power to grant alimony for a period beyond the life of the husband. The nearest approach to any such holding is the opinion of Mr. Justice Allen in *Parsons v. Parsons,* 70 Colo. 333, 201 Pac. 559, wherein appears this statement: "We will assume, without deciding, that under our divorce statute the courts have the power to make a decree for alimony which will survive the death of the husband." But the holding in that case was that the stipulation between husband and wife, on which the decree was based, did not contemplate payment after the death of the husband. In a note to that case in 18 A.L.R. 1041, is the following quotation from *Nelson v. Nelson,* 282 Mo. 412, 221

S.W. 1066: "Alimony was allowed and enforced as support due from husband to wife during their legal separation. This was the theory and origin of alimony under the unwritten law. Consequently, alimony decreed the wife continued only during the joint lives of herself and her husband. Upon the death of either it was at end." Likewise in 17 American Jurisprudence, page 411, section 503, there is a statement that, "The duty to support terminates with death, and the right to alimony also ceases. The function of alimony is merely to make provision for the support of the wife during the lifetime of the husband."

No case has been cited where an executor of a deceased husband has sought and been granted a modification of a decree calling for payments during the life of the wife based upon a contract between husband and wife. There appears to be no such case in Colorado. In 1933 the legislature passed an act (S. L. '33, p. 444, c. 72, '35 C.S.A., c. 56, §29) relating to marriage and divorce, section 5 of which reads as follows: "Courts shall have jurisdiction to enforce specifically the terms and payments provided in marriage settlement contracts and separate maintenance agreements, heretofore or hereafter entered into, whether the parties have been divorced or not." We upheld the constitutionality of this act in *Titus v. Titus,* 96 Colo. 191, 41 P. (2d) 244.

The foregoing is a brief description of the law as it existed at the time the parties in the instant case entered into their agreement. Our recent opinion in *Greer v. Greer,* 110 Colo. 92, 130 P. (2d) 1050, has not changed that interpretation of it. This background might almost be said to be a part of the context of their agreement, and certainly should be considered in its interpretation. This being true, we believe it is significant that: (1) nowhere in the divorce complaint is there any prayer for alimony or any facts alleged which raise any issue in respect of alimony; (2) the contract called for

payments of $450 a month to the wife after the death of the husband, unlike the usual decree for alimony ceasing on the husband's death; (3) the only place where the word "alimony" is used is in that portion of the clause in the contract where monthly payments to be made by the husband are described as "in lieu of any and all claim which might be made for alimony"; and (4) the decree contains the provision for a specific carrying out of each and every of the terms of said written agreement, including the payment on or before the 10th day of each calendar month of the sums of money agreed by the husband in said written agreement to be paid. We are therefore of the opinion that the monthly payments provided in the contract to be paid to Edith Liebhardt for the remainder of her life, unless she subsequently remarried, did not constitute a provision for alimony and did not become such when the court adopted and incorporated the contract in its decree.

We arrive at this conclusion having in mind the principle that courts will look to the substance as well as the form of such agreements. In the following cases, even though the term alimony was used, the courts applying this very principle have held that the payments provided were in fact not alimony: *Dickey v. Dickey,* 154 Md. 675, 141 Atl. 387, 58 A.L.R. 634; *North v. North,* 339 Mo. 1226, 100 S.W. (2d) 582, 109 A.L.R. 1061. This is on the theory that alimony did not extend beyond the life of the husband, and the decrees interpreted were given the effect of contracts providing for payments during the life of the wife.

The case of *Hall v. Hall,* 105 Colo. 227, 97 P. (2d) 415, was regarded as controlling by the trial court and counsel for defendant because of its similarity, and by counsel for plaintiff through the facts that distinguish it from the instant case. The latter point out that in the Hall case the husband created a trust with an

eastern trust company, providing that out of the income of the trust the trustee should make quarterly payments to the wife during her lifetime. Argument is made that there the contract and decree that adopted it was completely executed.

In the instant case the defendant, Edith Liebhardt, was willing to allow her former husband to make the disbursements to her during his lifetime as long as he bound his executor to make the payments if he predeceased her. That contingency having happened, his executor, plaintiff trust company, is now in much the same position that the eastern trust company was in the Hall case. As executor of Harry G. Leibhardt's estate it holds his property subject to the monthly payments to be made to Edith Liebhardt, as the eastern trust company holds property turned over to it in trust subject to the monthly charges to be paid to Mrs. Hall in that case. We note that the executor in its petition included therein a prayer to be relieved entirely from making any further payments to Edith Liebhardt, on the ground that payments of alimony and maintenance ceased with the death of the husband. It now abandons this position and seeks the right to introduce evidence looking toward a change in the amount of monthly payments. This is much the same situation as if the eastern trust company in the Hall case had sought to cancel or modify the trust agreement in which it was trustee. Counsel's brief contains the statement that in the *Hall case, supra,* "the contract and the decree, that adopted it, had been fully executed through a self-operative agreement * * * and there was nothing in the decree to be modified." In the instant case it can be said that the contract and decree that adopted it has been fully executed through an agreement that by its terms has now become self-operative, and there is nothing in the decree to be modified.

The judgment is accordingly affirmed.