No. 19,920.

IN THE MATTER OF THE ESTATE OF CHARLES EDGAR KETTERING, DECEASED, MIRIAM H. KETTERING, ET AL., *v.* THE FIRST NATIONAL BANK OF DENVER, EXECUTOR.

(376 P. [2d] 983)

Decided December 17, 1962.

Messrs. ROBINSON & ROBINSON, Mr. THOMAS M. SULLIVAN, Mr. LAIRD CAMPBELL, for plaintiffs in error.

Mr. BENJAMIN E. SWEET, Mr. HORACE F. PHELPS, for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

CHARLES EDGAR KETTERING died on June 1, 1960. He had been married to Miriam H. Kettering, but difficulties arose between them. On April 20, 1950, they entered into a property settlement agreement and a divorce followed. The plaintiffs in error were claimants in the trial court against the estate, contending that certain payments specified in the property settlement agreement providing for the support and maintenance of the claimants survived the death of Kettering. The sole question before the trial court, and as presented here, is the interpretation of the property settlement agreement, and particularly whether the husband's obligation to make monthly payments for the support and maintenance of the wife and child survived his death. The sections of the agreement material to the problem before us are as follows:

5. "For the support and maintenance of the wife and child, the husband agrees to pay to the wife so long as she shall reside in her present apartment * * * $266.25 per month * * * and after, the wife shall remove from said present abode the husband shall pay to her the sum of $333.75 per month, * * * provided, if the said child shall die or shall attain the age of twenty-three years, and so long as the wife shall remain unmarried, the husband shall continue to pay to the wife * * * one-half of the monthly amounts above provided, so long as the wife may live and remain unmarried; provided, further, that if the wife should remarry prior to said child reaching the age of twenty-three years, then the husband shall pay to the wife * * * one-half of the total monthly payments * * * ."

6. Provides that if the "fixed salary income of the husband shall, from time to time, or during any period, or periods, be increased, after deductions for withholding tax, social security and pension payments, $150.00 or more per month * * * then the husband shall pay 25% of such increase over said sum of $150.00." It also provides that any outside income of the wife "shall not

affect the obligation of the husband to make the payments herein provided for."

7. Provides for a $6,000.00 trust fund (thereafter created with the Denver United States National Bank as Trustee) to be established by the husband to guaranty the monthly payments by the husband "in the event the husband defaults in making any payment required" and in the event of a claim of default provides for enforcement by "Court or contempt action" and for the filing of counter-affidavits by the husband if the wife makes affidavit of default and furnishes such affidavits to the husband. Said fund is also to pay for medical and educational expenses of the child. If the child dies before her twenty-fourth birthday the fund is to be paid to the wife, but "such payments shall not relieve the husband of the obligation to make the current monthly payments * * * ." Upon the child reaching twenty-four years of age the fund is to be paid to the wife and daughter in equal shares, but such payment "shall not relieve the husband of the obligation to make the current monthly payments * * * ."

8. Provides that upon the death of the husband, if the husband has failed to make such provision in his Will, the sum of $10,000.00 shall be paid by his executor to the above trust, if still in existence.

9. Provides that, upon the death of the husband, if the above trust has ceased to exist, said $10,000.00 shall be paid by the executor to the wife.

10. Provides that the monthly payments provided for in paragraph 5 shall be considered as being one-half for the wife and one-half for the child with the wife to pay income taxes on the payments allocated to her and the husband to have the right to claim the child as a dependent.

12. Provides that "the wife accepts the provisions herein made for her in lieu of any and all other claims, demands or provisions which might or could be made for her maintenance and support, and the wife also ac-

cepts the provisions herein made for her in lieu of any right to inherit from the husband by reason of the laws of descent and distribution of Colorado or any other jurisdiction, and in lieu of any claim for widow's allowance or any right of election to take against any Last Will and Testament of the husband, provided, however, that nothing in this Agreement shall be construed to bar or prevent the wife from taking any devise or bequest made to her by the husband or prevent her from claiming the benefits provided in paragraphs 8 and 9, and provided further, nothing in this Agreement contained shall prevent or bar the wife from taking, as a direct or contingent beneficiary, the proceeds of any policy of insurance upon the life of the husband or under any life insurance trust now or hereafter established."

18. "Time is hereby declared to be of the essence of this agreement and all of the covenants, stipulations, provisions, agreements and promises herein contained shall, so far as appropriate, apply to, bind and be obligatory upon the heirs, executors, administrators, personal representatives, successors or assigns of the parties * * * ."

The executor filed a motion to dismiss the claim. Upon hearing, the trial court dismissed the claim, finding that the agreement did not provide for the payment of sums for the support and maintenance of the wife and child beyond the period of the husband's life and that the obligation to make such payments did not devolve upon the estate of the husband.

█ Ordinarily the obligation of a husband for the support and maintenance of a wife from whom he has separated ends with his death; but the rule is recognized in Colorado that a husband may by contract agree that such payments shall continue after his death and be payable from his estate, *International Trust Co. v. Liebhardt,* 111 Colo. 208, 139 P. (2d) 264. Such an agreement is enforceable if it expressly or by clear implication provides that the payments shall continue

after the death of the husband, *Cooke v. Cooke,* 154 N.Y. S. (2d) 757, 762. See also *Liebhardt,* supra, where the agreement expressly provided that the executor should continue the payments after the husband's death.

The question posed then is: Does the agreement before us by express provision or by clear implication express the intent of the husband to bind his estate to continue payments for the support and maintenance of the wife after his death? We think not.

Claimant founds her claim on a single statement in paragraph 5 of the agreement that the payments for support and maintenance shall be made to the wife "so long as the wife may live and remain unmarried"; but the intent of a document may not be determined from an isolated statement contained therein, particularly when, as here, other provisions cast serious doubt upon the meaning of such statement.

We yield to the admonition of Judge Learned Hand that "courts should be wary of making a fortress out of the dictionary," since there is no more likely way to misapprehend the meaning of language in a contract than to read the words literally, forgetting the object which the document as a whole seeks to achieve. *Cooke v. Cooke,* supra.

In our view, the phrase "so long as the wife may live" did not evidence clear and express intent that the payments be a charge upon the estate when considered in context with other provisions of the contract which clearly express the alternative to occur upon the death of the husband. We refer to paragraphs 12, 7, 8 and 9 of the agreement.

Paragraph 12 of the agreement provides that the wife accepts the provisions of the agreement in lieu of any claim or demand which she might have for support and waives any rights against the husband's estate, excepting and reserving to herself only the right to receive any bequest or devise made to her by the husband, the right to obtain any benefits under paragraphs 8 and 9

in the agreement, and the right to be a beneficiary under the proceeds of any policies of insurance or any life insurance trust. No reservation is made in this paragraph for any claim against the estate for the support and maintenance payments set forth in paragraph 5 of the contract as was done in *Wise v. Wise,* 99 Colo. 562, 64 P. (2d) 594, where the payments for support were held to survive the death of the husband. The clear implication from paragraph 12 is that what the wife reserved to herself after her husband's death was the right to receive the benefits provided by paragraph 7 of the contract, together with any distribution which might come to her under paragraphs 8 and 9 of the contract, and any life insurance or life insurance trust of which she might be beneficiary.

Moreover, paragraphs 8 and 9 of the agreement specifically recognize that the husband's death might occur before that of the wife and expressly provides that, in that contingency, the husband's obligation beyond his death was to devise $10,000.00 to the trustee of the trust set up in paragraph 7 of the agreement, or in the alternative, if the trust had lapsed or was no longer in existence, to devise the $10,000.00 directly to the wife. No other provisions were made which depended upon the contingency of the husband's death before that of the wife. The failure of the parties to provide by express provision or by clear implication that the support payments should survive the death of the husband cannot be supplied by this Court. *Magarrell v. Magarrell,* 144 Colo. 228, 355 P. (2d) 946.

Other provisions of the agreement, such as the escalator clause which added to the support money payments a proportionate amount of any increase in salary which the husband might receive, indicate the clear recognition of the parties that the obligation for support was a personal one terminable upon the death of the husband with payment of $10,000.00 to the trust or to the wife, as the case might be.

Claimant contends that clause 18, providing that the agreement should be binding upon the heirs, executors, administrators, etc., indicates the intent of the parties that the payments should continue and be an obligation of the executor of the estate. We cannot agree. We would point out that the clause binds the executor, administrators, etc., *so far as appropriate.* This is an unusual provision in a clause binding heirs, executors and administrators and indicates an intention to limit the liabilities to be charged against the estate and not to broaden them so as to make paragraph 5 binding in the face of other provisions of the contract clearly indicating such was not the intention of the parties.

The judgment is affirmed.

MR. JUSTICE McWILLIAMS dissents.

MR. JUSTICE FRANTZ not participating.

MR. JUSTICE McWILLIAMS dissenting:

I must respectfully dissent.

At the outset it is deemed of utmost importance to note that we are here concerned with contractual rights and obligations, not an alimony and support order, or, as urged by counsel for the executor, something "in the nature" of an alimony and support order. See *International Trust Company, Executor v. Liebhardt,* 111 Colo. 208, 139 P. (2d) 264. Accordingly we are not concerned with the general rule that an alimony and support order in favor of the wife abates with the death of the husband. Rather we are concerned with a contract and the law presumes that parties to the contract intend to bind not only themselves, but their personal representatives as well, in the absence of any clearly expressed intent to the contrary. This presumption is well stated in *United States v. Chain,* 300 U.S. 31, 57 Sup. Ct. 394, where it was stated:

"It is a presumption of law that the parties to a contract bind not only themselves but their personal representatives. Executors therefore are held to be liable on all contracts of the testator which are broken in his lifetime, and with the exception of contracts in which personal skill or taste is required, on all contracts broken after death."

In paragraph 5 of their agreement the husband in so many words promised to pay a certain sum to the wife "so long as the wife *may live* and remain unmarried." (Emphasis supplied.) In paragraph 18 it is provided that "all of the covenants, stipulations, provisions, agreement and promises herein contained shall, so far as appropriate, apply to, bind and be obligatory upon the heirs, executors, administrators, personal representatives, successors and assigns of the parties or either of them, and whether so expressed or not."

This language strikes me as being singularly clear and unequivocal and easily understood. To me, at least, it means that the *expressed* intent of the parties is that the husband's promise to pay a monthly sum to his wife so long as she "may live and remain unmarried" is to be binding on his executor and, of necessity therefore, must survive his death. The majority opinion, as I read it, concedes this much, but then proceeds with the comment "that the intent of a document may not be determined from an isolated statement contained therein, particularly when, as here, other provisions cast serious doubt upon the meaning of an isolated statement."

The net effect of the majority opinion is to hold that paragraphs 7, 8, 9 and 12, admittedly not by any express language but by necessary implication, negate the clear and express terms contained in paragraphs 5 and 18. This construction I believe is completely unwarranted and unjustified, and therefore I dissent.