The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 26, 2021

**2021COA116**

**No. 20CA0816, *In re Marriage of Cerrone* — Family Law —
Modification and Termination of Provisions for Maintenance,
Support, and Property Disposition — Remarriage**

A division of the court of appeals holds that, under

section 14-10-122(2)(a)(III), the inclusion of a nonmodification

clause in a separation agreement, on its own, is insufficient to

continue a maintenance obligation after a recipient spouse's

remarriage. In reaching this conclusion, the division declines to

follow *In re Marriage of Parsons*, 30 P.3d 868, 869 (Colo. App. 2001).

COLORADO COURT OF APPEALS     **2021COA116**

Court of Appeals No. 20CA0816
Jefferson County District Court No. 16DR30029
Honorable Robert Lochary, Judge

In re the Marriage of

Jill Louise Cerrone,

Appellee,

and

Dennis John Cerrone,

Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE GROVE
J. Jones and Johnson, JJ., concur

Announced August 26, 2021

Ammarell Deasy, LLP, Daniel N. Deasy, Patrick N. Hoover, Greenwood Village, Colorado, for Appellee

The Burnham Law Firm, P.C., Aaron Belzer, J.P. Prentiss, Boulder, Colorado, for Appellant

¶ 1     Dennis John Cerrone (husband) appeals the district court's order adopting a magistrate's ruling denying his motion for a declaratory judgment that his maintenance obligation to Jill Louise Cerrone (wife) under the parties' separation agreement ended automatically on wife's remarriage. Because the separation agreement did not expressly provide that maintenance would continue after wife remarried, we conclude that husband's maintenance obligation terminated by operation of law once she did so. We therefore reverse the order and remand the case to the district court with directions to grant husband's motion and determine the amount wife must reimburse him for maintenance he paid after the date of her remarriage.

## I.     Background

¶ 2     The parties' twenty-four-year marriage ended in 2016. The district court approved their separation agreement and incorporated it into the decree.

¶ 3     As relevant here, under a subheading titled "Modification," the agreement states,

> This *Plan* shall not be modified except by its
> own terms or by operation of law or by written

1

agreement of the Parties with approval by the Court.

Under "Maintenance," the agreement provides that

> [c]ommencing July 1, 2016, Husband shall pay the Wife maintenance in the amount of $2,489.00 per month for a period of 138 months (totaling 11 ½ years). Payments shall be made directly by Husband to Wife. Maintenance shall terminate at the end of the contractual period of 11 ½ years, December 31, 2027.

> All maintenance outlined herein is contractual in nature and shall be non-modifiable for any reason whatsoever by the Court. The Court shall not retain jurisdiction to modify the maintenance either in amount or duration.

¶ 4    Three years after the court entered the decree, husband moved for a declaratory judgment that his maintenance obligation had automatically terminated by operation of law as of wife's May 25, 2018, remarriage. *See* § 14-10-122(2)(a)(III), C.R.S. 2020 ("Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon . . . [t]he remarriage of or the establishment of a civil union by the party receiving maintenance.").

¶ 5    A district court magistrate denied husband's motion, concluding that, by stating in their separation agreement that

2

maintenance was contractual and nonmodifiable, the parties had "agreed in writing" that husband's maintenance obligation would survive wife's remarriage.

¶ 6     Husband petitioned for district court review of the magistrate's order. The district court affirmed and adopted the magistrate's order.

## II.     Maintenance After the Recipient Spouse Remarries

¶ 7     Husband contends that the magistrate and district court erred by ruling that his obligation to pay wife maintenance continued after her remarriage rather than automatically terminating under section 14-10-122(2)(a)(III). He asserts that *In re Marriage of Parsons*, 30 P.3d 868, 869 (Colo. App. 2001), which the magistrate found controlling, was wrongly decided. In the alternative, he argues that *Parsons* is distinguishable from the present case based on the specific language of the parties' separation agreement.

¶ 8     We agree that the magistrate and district court erroneously concluded that husband's maintenance obligation continued after wife's remarriage. In reaching this conclusion, we decline to follow *Parsons* to the extent it holds that the mere presence of a nonmodification clause is, on its own, sufficient under section

14-10-122(2)(a)(III) to continue a maintenance obligation after a recipient spouse's remarriage. *See Chavez v. Chavez*, 2020 COA 70, ¶ 13 (noting that divisions of the court of appeals function independently and thus "divisions are not bound by the decisions of other divisions"). We further conclude that the particular separation agreement language at issue is materially distinguishable from that in *Parsons* and is not sufficient to continue husband's maintenance obligation after wife's remarriage. Therefore, we reverse the district court's order.

## A. Standard of Review

¶ 9 We review de novo the language of the governing statute and the parties' separation agreement. *See In re Marriage of Williams*, 2017 COA 120M, ¶ 11.

## B. Section 14-10-122(2)(a)(III)

¶ 10 Section 14-10-122(2)(a)(III) states, in relevant part, that "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon . . . [t]he remarriage of . . . the party receiving maintenance." Accordingly, the issue, as it was in the district court, is whether the parties "agreed in writing" in their separation agreement that

4

maintenance would continue for the full 138-month term even if wife remarried. *See id.*; *cf. Williams*, ¶ 10 (determining de novo, based on the separation agreement, whether maintenance survived the obligor spouse's death as a continuing obligation of his estate or was terminated under section 14-10-122(2)(a)(I)).

### C.    Early Case Law Interpreting the Statute

¶ 11    A division of this court addressed a predecessor version of section 14-10-122(2)(a)(III) in *Spratlen v. Spratlen*, 30 Colo. App. 91, 93-94, 491 P.2d 608, 609-10 (1971). That statute provided that "[t]he remarriage of a party entitled to [maintenance] . . . shall relieve the other party from further payments of said [maintenance]; but nothing in this section shall preclude the parties from providing otherwise by written agreement or stipulation." *Id.* at 93, 491 P.2d at 609 (quoting § 46-1-5(5), C.R.S. 1963). The separation agreement at issue in *Spratlen* provided that the husband would pay maintenance to the wife "until the death of his father." *Id.* at 92, 491 P.2d at 609. The division held that the statute "require[d] an express statement that [maintenance] continue after remarriage, and the failure of the agreement in question to specify this point" was fatal to the wife's argument that her maintenance continued

5

until the death of the husband's father regardless of her remarriage. *Id.* at 94, 491 P.2d at 610.

¶ 12    *Spratlen* relied on *In re Estate of Kettering*, 151 Colo. 202, 206-07, 376 P.2d 983, 986 (1943), in which the supreme court, applying common law principles, held that maintenance ends with an obligor spouse's death unless the agreement otherwise "expressly or by clear implication" provides that maintenance payments continue.  Thus, in *Kettering*, the agreement's language — which specified only that maintenance would continue "so long as the wife may live and remain unmarried" — did not require the husband's estate to continue paying the wife maintenance after his death.  *Id.* at 207, 376 P.2d at 986; *see also Williams*, ¶¶ 9 n.1, 12-21 (relying in part on *Kettering* and concluding that similar language was insufficient under the provision of section 14-10-122(2)(a) stating that, "[u]nless otherwise agreed in writing or expressly provided in the decree," the obligation to pay maintenance ends on the obligor spouse's death); *cf. Int'l Tr. Co. v. Liebhardt*, 111 Colo. 208, 218, 139 P.2d 264, 267 (1943) (An agreement providing that maintenance would continue "after the death of the husband"

6

was explicit enough to require his estate to continue paying the wife maintenance.).

¶ 13     Ten years after *Spratlen*, a division of this court decided *In re Marriage of Hahn*, 628 P.2d 175 (Colo. App. 1981), again addressing whether particular separation language was explicit enough to continue maintenance payments after the recipient spouse's remarriage.  The *Hahn* division interpreted a previous but materially similar version of section 14-10-122(2)(a)(III), which provided, "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance."  *Id.* at 176 (quoting § 14-10-122(2), C.R.S. 1973).

¶ 14     The separation agreement in *Hahn* provided that maintenance payments "will not be subject to modification for any reason except the death of the wife."  *Id.*  Citing *Spratlen*, the division noted that section 14-10-122(2) had been "construed to require an express provision that alimony continue after marriage."  *Id.*  However, the division then concluded that

> the quoted language of the separation agreement is such an express provision. Although it does not explicitly provide for continuation or termination of maintenance in the event of remarriage, nevertheless, it indicates that it was the contemplation of the parties that only the wife's death would absolve the husband of liability for payment of maintenance.

*Id.*

## D.    *Parsons*

¶ 15    This brings us to *Parsons*, which was decided twenty years after *Hahn*. There, a division of this court also cited *Spratlen* with approval for the proposition that "[g]enerally, to overcome th[e] statutory termination upon remarriage, an explicit reference to the continuation of maintenance after the recipient's remarriage is necessary." *Parsons*, 30 P.3d at 869. Regarding the agreed ninety-six months of maintenance, the *Parsons* separation agreement stated that

> [i]t is expressly understood and agreed that the maintenance . . . is contractual in nature and non-modifiable by any court. The payment of maintenance to [wife] shall not be subject to increase, or decrease, or extension due to change of economic circumstances of either party or for any other reason.

*Id.* at 868.

¶ 16     The obligor spouse argued that this language was materially distinguishable from that at issue in *Hahn* because it did not reference a specific event, i.e., the wife's death, as the *only* ground on which maintenance could be modified. *Id.* at 869. The division rejected this argument and, in doing so, both extended *Hahn* and departed from its own description of *Spratlen* as requiring "an explicit reference to the continuation of maintenance after the recipient's remarriage." *Id.* The division held that "express language concerning termination is preferable," but even in the absence of express language, "the presence of a nonmodification clause is sufficient to overcome the statutory presumption that maintenance terminates upon the recipient's remarriage." *Id.*

¶ 17     As support for its holding, *Parsons* relied on *Hahn* and on *Telma v. Telma*, 474 N.W.2d 322, 323 (Minn. 1991). *Parsons*, 30 P.3d at 869-70. In *Telma*, however, the separation agreement at issue provided that the obligor spouse waived "any right" to petition the court for modification under Minnesota's maintenance termination statute and "applicable case law." 474 N.W.2d at 323. Therefore, the Minnesota court found that maintenance did not

terminate under that state's statute on the wife's remarriage, describing the husband's waiver of the termination on remarriage provision of the statute as "unequivocal." *Id.*

E.   Analysis

¶ 18    In our view, the *Parsons* division diverged from the plain language of section 14-10-122(2)(a)(III) when it concluded that "the presence of a nonmodification clause" — standing alone — is sufficient to overcome the statutory presumption that the obligation to pay maintenance ends on the recipient spouse's remarriage. *See Parsons*, 30 P.3d at 869.  Specifically, the *Parsons* division's statement that a nonmodification clause will overcome the automatic termination on remarriage provision of the statute went far beyond both *Spratlen* and *Hahn*, where the agreements provided that *only* one identified event would serve as a basis for modifying maintenance.  And *Parsons*' statement is also inconsistent with that division's description of the requirement from *Spratlen* that "an *explicit reference* to the continuation of maintenance after the recipient's remarriage is necessary" to overcome the automatic termination on remarriage provision.  *Id.* (emphasis added).

10

¶ 19　Further, we do not view as talismanic the terms "contractual" and "nonmodifiable." To the contrary, the language of the separation agreement must be read as a whole, and in context, to determine the meaning of those terms or any others. *See In re Marriage of Rother*, 651 P.2d 457, 459 (Colo. App. 1982).

¶ 20　Accordingly, we decline to follow *Parsons* to the extent it holds that a nonmodification clause in a separation agreement is alone sufficient to evince the parties' agreement that the maintenance obligation will survive the recipient spouse's remarriage. Instead, to avoid termination of maintenance by operation of law under section 14-10-122(2)(a)(III), a separation agreement or decree must include an "express provision" that maintenance will continue even if the recipient spouse remarries. *See Hahn*, 628 P.2d at 176. And the parties must make it unmistakably clear in such a provision that they have "otherwise agreed" under the statute, meaning that they agree the automatic termination on remarriage provision will not apply to their maintenance award. *See* § 14-10-122(2)(a)(III); *see also Palmer v. Palmer*, 170 P.3d 676, 680 (Ariz. Ct. App. 2007) (holding that parties seeking to avoid a similar Arizona statute "must make their intention unmistakably clear") (emphasis omitted)

(citation omitted); *Cortese v. Cortese*, 176 P.3d 1064, 1066-67 (Mont. 2008) (holding under similar Montana statute that maintenance terminates by operation of law on the remarriage of the recipient party, even if the separation agreement contains a nonmodification clause, because an express provision that maintenance will not terminate is required); *cf. Williams*, ¶¶ 12-21 (requiring that separation agreement language "expressly or by clear implication provide that the payments will continue after the death of the obligor").

¶ 21　　We further conclude that the particular separation agreement language used by the parties here is insufficiently clear, even under *Parsons*, to require husband to continue paying wife maintenance after her remarriage.  In *Parsons*, the agreement stated that maintenance was nonmodifiable "by any court," but went on to state that "[t]he payment of maintenance to [wife] shall not be subject to increase, or decrease, or extension due to change of economic circumstances of either party *or for any other reason*."  30 P.3d at 868 (emphasis added).  In contrast, the maintenance section of the agreement in this case provides that maintenance "is contractual in nature and shall be non-modifiable for any reason

12

whatsoever by the Court." But the second phrase that appeared in the *Parsons* agreement — providing that the maintenance cannot be modified based on a change in economic circumstances "or for any other reason" — is absent.

¶ 22    This omission is crucial to our analysis because, under the statute, husband's obligation to pay wife maintenance automatically terminates on her remarriage without any action by the court — that is, by operation of law. *See* § 14-10-122(2)(a)(III); *Spratlen,* 30 Colo. App. at 94, 491 P.2d at 610. The qualifier "by the court" suggests that the parties intended that maintenance would not be subject to a motion to modify under section 14-10-122(1)(a) based on substantial and continuing changed circumstances. But it does not follow that the *automatic* terminating events in section 14-10-122(2)(a) — which require no action by the court — are inapplicable.

¶ 23    Wife argues, however, that the "miscellaneous" section of the agreement suggests otherwise. This section states that if there is any fraud, misstatement, or omission in the parties' financial affidavits, the innocent party will have the right to return to court for amended orders concerning all agreement provisions "except for

13

the maintenance provisions which are expressly non-modifiable." However, any modification based on fraud or nondisclosure by a party would not be automatic, or "by operation of law," as under section 14-10-122(2)(a) but rather would require action "by the court." *See* C.R.C.P. 60(b)(1). Thus, prohibiting any such modifications is consistent with the agreement's maintenance and modification provisions and also with applying section 14-10-122(a)(III) on wife's remarriage.

¶ 24 In sum, we conclude that the magistrate and district court erred by interpreting the parties' separation agreement to require husband to continue paying wife maintenance after her remarriage despite the automatic termination on remarriage provision of section 14-10-122(2)(a)(III).

### III. Conclusion

¶ 25 The order is reversed, and the case is remanded to the district court with instructions to declare that husband's obligation to pay wife maintenance terminated on her remarriage pursuant to section 14-10-122(2)(a)(III) and to determine the amount she must reimburse him accordingly.

JUDGE J. JONES and JUDGE JOHNSON concur.

14