The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy

SUMMARY
August 28, 2025

**2025COA75**

**No. 24CA1713, *Marriage of Clark* — Family Law — Dissolution — Modification and Termination of Provisions for Maintenance, Support, and Property Disposition — Remarriage**

In this dissolution of marriage case, a division of the court of appeals considers the contractual language necessary to "otherwise agree[] in writing" that the obligation to make future maintenance payments will not automatically terminate upon a recipient spouse's remarriage under section 14-10-122(2)(a)(III), C.R.S. 2025.

The majority holds that all that is required is an agreement that expressly or by clear implication indicates the parties' intent that the payments continue.  In reaching this conclusion, the majority declines to follow *In re Marriage of Cerrone*, 2021 COA 116, ¶ 20, to the extent that *Cerrone* could be read to require specific use of the term "remarriage" to define the circumstances under which maintenance obligations will not terminate.

Because the separation agreement here indicates, by clear implication, the parties' intent that maintenance payments will continue even if the recipient remarries, the majority concludes that the parties have "otherwise agreed in writing" under section 14-10-122(2)(a)(III) that the automatic termination on remarriage provision does not apply. Accordingly, the majority affirms the district court's order denying the motion to terminate maintenance payments.

The special concurrence, while agreeing with the majority opinion, highlights the inconsistency in this court's precedent concerning the contractual language necessary to prevent the automatic termination of maintenance payments under section 14-10-122(2)(a)(III) and urges the supreme court to resolve the conflict.

Court of Appeals No. 24CA1713
Mesa County District Court No. 22DR355
Honorable Craig P. Henderson, Judge
Honorable Daniel M. Garcia, Magistrate

In re the Marriage of

Jessica Kay Clark,

Appellee,

and

Christopher Clay Clark,

Appellant.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE YUN
Tow, J., concurs
Sullivan, J., specially concurs

Announced August 28, 2025

Polidori, Franklin, Monahan & Beattie, L.L.C., Robin Lutz Beattie, Lakewood, Colorado, for Appellee

Epstein Patierno, LLP, Wendy J. Smock, Robert W. Voorhees, Denver, Colorado, for Appellant

¶ 1    In this dissolution of marriage case, Christopher Clay Clark (husband) appeals the district court's adoption of the magistrate's order denying his motion to terminate his maintenance obligation to Jessica Kay Clark (wife) following her remarriage.

¶ 2    Section 14-10-122(2)(a)(III), C.R.S. 2025, provides, in relevant part, that "[u]nless otherwise agreed in writing . . . , the obligation to pay future maintenance is terminated upon . . . [t]he remarriage of . . . the party receiving maintenance."  The parties' separation agreement provides that husband will pay wife "the set amount" of $108,000 in monthly installments over "72 months (6 years)" and specifies that this "[a]greement is set and may not be modified or terminated."

¶ 3    We hold that, by including this provision in the separation agreement, the parties "otherwise agreed in writing" to prevent maintenance from terminating upon wife's remarriage during this six-year period.  *Id.*  In so holding, we decline to read *In re Marriage of Cerrone*, 2021 COA 116, ¶ 20 (citation omitted), so strictly as to always require an "'express provision' that maintenance will continue even if the recipient spouse remarries."  Instead, all the

statute requires is an agreement that expressly or by clear implication indicates the parties' intent that the payments continue.

¶ 4 We therefore affirm the district court's order and remand the case for further proceedings concerning wife's request for appellate attorney fees.

## I.    Background

¶ 5 In 2022, wife petitioned to dissolve the parties' marriage of approximately twenty-two years. The parties, who were both pro se, managed to settle all matters related to the dissolution of their marriage by executing a separation agreement using a standard form promulgated by the Judicial Department. *See* JDF 1115, Separation Agreement (Marriage) (revised Feb. 2018), https://perma.cc/UG47-R8BF.

¶ 6 Section four of the separation agreement, titled "Maintenance (Spousal/Partner Support)," provides that husband will pay wife $1,500 per month starting on June 20, 2022, and ending on June 20, 2028. It then states: "In order for the Court to modify this provision in the future [pursuant to section 14-10-122], you must select 4(b) . . . ." The parties instead selected "4(a)," designating

that "[t]he terms of this Maintenance Agreement are contractual in nature and shall not be modified in the future."

¶ 7    The parties also completed section five of the separation agreement, "Other Terms," which provided blank space for the parties to fill in additional terms.  In that space, the parties handwrote: "[Husband] agrees to pay [wife] the set amount of $108,000, payable to wife the 21st of every month for 72 months (6 years).  Agreement is set and may not be modified or terminated."  A magistrate entered a decree that dissolved the parties' marriage and incorporated by reference the terms of the separation agreement.

¶ 8    In October 2023, wife sought to have husband held in contempt for failure to pay maintenance.  Husband, in turn, moved to terminate his maintenance obligation under section 14-10-122(2)(a)(III) because wife had remarried in June 2023.  In response, wife acknowledged her remarriage but asserted that the language in the separation agreement was sufficient to prevent the termination of maintenance.

¶ 9    A magistrate agreed with wife and denied husband's motion to terminate maintenance.  After husband petitioned for review, the

district court upheld and adopted the magistrate's order, reasoning that

> [t]he Section 5 language and the introductory paragraphs of the Agreement read together with the Section 4 language states in clear and express terms that [husband] agrees to pay [wife] maintenance in "the *set* amount" . . . of $108,000 in monthly payments of $1500 over six years. Even more importantly, Section 5 states unequivocally that the "[a]greement is set and may not be modified or *terminated*. . . . It is this language of the maintenance agreement being *set* and that it *may not be terminated* that convinces the Court that the agreement contains an express condition in unmistakably clear terms that the maintenance was not to be changed or terminated for any reason including by operation of law.

¶ 10    Husband now appeals.

II.    Termination of Maintenance Upon Wife's Remarriage

¶ 11    Husband contends that both the magistrate and the district court erred by ruling that his maintenance obligation continued after wife's remarriage rather than automatically terminating under section 14-10-122(2)(a)(III). He asserts that under *Cerrone,* ¶¶ 18-24, maintenance terminated because the separation agreement does not explicitly state that maintenance would continue after wife's remarriage. We disagree because we conclude

4

that the parties' intent for maintenance to continue is otherwise apparent from the separation agreement.

## A. Standard of Review

¶ 12    Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22. We must accept the magistrate's factual findings unless they are clearly erroneous. *In re Marriage of Young*, 2021 COA 96, ¶ 8. However, we review de novo questions of law, including questions of statutory and contract interpretation. *Sheehan*, ¶ 22.

## B. Section 14-10-122(2)(a)(III) and Law Governing Separation Agreements

¶ 13    Section 14-10-122(2)(a)(III) states, in relevant part, that "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon . . . [t]he remarriage of . . . the party receiving maintenance." Accordingly, we must resolve whether the parties "otherwise agreed in writing" through their separation agreement that maintenance would continue even if wife remarried. *Id.*; *cf. In re Marriage of Williams*, 2017 COA 120M, ¶ 10 (determining de novo, based on the

5

separation agreement, whether maintenance survived the obligor spouse's death as a continuing obligation of his estate or was terminated under section 14-10-122(2)(a)(I).

¶ 14    A separation agreement is a contract between the parties. *In re Marriage of Deines*, 608 P.2d 375, 377 (Colo. App. 1980). Our primary goal when interpreting an agreement is to determine and give effect to the parties' intent based primarily on the language of the agreement. *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000); *In re Marriage of Crowder*, 77 P.3d 858, 860-61 (Colo. App. 2003). We construe the agreement's terms in accordance with their plain and generally accepted meanings. *Ad Two*, 9 P.3d at 376. And we evaluate the contract as a whole and seek to "give effect to all provisions so that none will be rendered meaningless." *Gagne v. Gagne*, 2014 COA 127, ¶ 53 (quoting *Pepcol Mfg. Co. v. Denv. Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984)).

### C.    *In re Marriage of Cerrone*

¶ 15    In *Cerrone*, ¶¶ 7-25, another division of this court analyzed the contractual language required to waive section 14-10-122(2)(a)(III)'s automatic termination of maintenance upon a receiving party's remarriage. There, the parties had executed a separation

agreement awarding the wife "maintenance in the amount of $2,489.00 per month for a period of 138 months." *Cerrone*, ¶ 3. The agreement further provided that "[m]aintenance shall terminate at the end of the contractual period of 11 1/2 years" and that "[a]ll maintenance outlined herein is contractual in nature and shall be non-modifiable for any reason whatsoever by the Court." *Id.*

¶ 16 The division concluded that the contractual language was not sufficient to continue the husband's maintenance obligation after the wife's remarriage. *Id.* at ¶ 8. The division held that "to avoid termination of maintenance by operation of law under section 14-10-122(2)(a)(III), a separation agreement or decree must include an 'express provision' that maintenance will continue even if the recipient spouse remarries." *Id.* at ¶ 20 (quoting *In re Marriage of Hahn*, 628 P.2d 175, 176 (Colo. App. 1981)).

¶ 17 The *Cerrone* division reasoned that, to overcome the statutory presumption that maintenance ends on the recipient spouse's remarriage, the plain language of section 14-10-122(2)(a)(III) requires the parties to "make it unmistakably clear . . . that they have 'otherwise agreed' under the statute, meaning that they agree the automatic termination on remarriage provision will not apply to

7

their maintenance award." *Id.* at ¶¶ 18, 20. Accordingly, the division declined to follow *In re Marriage of Parsons*, 30 P.3d 868, 869 (Colo. App. 2001), "to the extent [*Parsons*] holds that a nonmodification clause in a separation agreement is alone sufficient to evince the parties' agreement that the maintenance obligation will survive the recipient spouse's remarriage." *Cerrone*, ¶ 20.

¶ 18 Instead, the *Cerrone* division was persuaded by *Spratlen v. Spratlen*, 491 P.2d 608, 609-10 (Colo. App. 1971), and *Hahn*, 628 P.2d at 176, both of which interpreted previous, but similar, versions of section 14-10-122(2)(a)(III) and held that there must be an express provision that maintenance would continue after the recipient's remarriage in order to overcome the statutory termination of maintenance. *See Cerrone*, ¶¶ 11-14, 18-20.

¶ 19 Thus, the *Cerrone* division did "not view as talismanic the terms 'contractual' and 'nonmodifiable'" and instead held that "the language of the separation agreement must be read as a whole, and in context, to determine the meaning of those terms or any others." *Id.* at ¶ 19. And the division concluded that the separation agreement before it was "insufficiently clear . . . to require husband

to continue paying wife maintenance after her remarriage." *Id.* at ¶ 21.

### D. Section 14-10-122(2)(a)(III) Does Not Require Talismanic Language

¶ 20 To the extent that *Cerrone* can be read to require express mention of the term "remarriage" to prevent maintenance from terminating when the recipient remarries, we decline to follow that holding. *See Chavez v. Chavez*, 2020 COA 70, ¶ 13 (noting that divisions of the court of appeals function independently and thus "are not bound by the decisions of other divisions"). Instead, relying on *Williams*, ¶ 16, and *Hahn*, 628 P.2d at 176, we hold that a separation agreement need not use any talismanic language to preclude maintenance from terminating upon remarriage; all that is required is a writing that "expressly *or by clear implication* provide[s] that the payments will continue after" the recipient spouse remarries. *Williams*, ¶ 16 (emphasis added).

¶ 21 In *Williams*, a division of this court addressed the type of contractual language necessary to prevent the automatic termination of maintenance under an earlier version of section

9

14-10-122(2)(a).[1] *Williams*, ¶¶ 9-24. Before the enactment of section 14-10-122(2)'s predecessor, the common law provided that the obligation to make maintenance payments would end upon the death of the obligor unless the obligor contractually agreed that the payments would continue. *In re Estate of Kettering*, 376 P.2d 983, 986 (Colo. 1962). "Such an agreement [was] enforceable if it expressly *or by clear implication* provide[d] that the payments shall continue after the death of the husband." *Id.* (emphasis added); *see Williams*, ¶ 14. The *Williams* division found "the holdings of the pre-statute cases instructive in delineating what type of writing would be required under [section 14-10-122(2)] to continue the payment of maintenance after the death of the obligor" and held that "the writing must expressly *or by clear implication* provide that the payments will continue after the death of the obligor." *Williams*, ¶ 16 (emphasis added).

---

[1] That version of the statute provided, "Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance." § 14-10-122(2), C.R.S. 1988; *see In re Marriage of Williams*, 2017 COA 120M, ¶ 9.

¶ 22    Although Colorado cases have not explicitly addressed the common law's "by clear implication" language when determining whether maintenance payments terminate upon a recipient's remarriage under section 14-10-122(2)(a)(III), they have nevertheless applied the principle.  *See Hahn*, 628 P.2d at 176; *Parsons*, 30 P.3d at 869 ("While express language concerning termination is preferable, the absence of that language is not fatal *if the intent is evident from the agreement or decree as a whole.*" (emphasis added)); *see also Spratlen*, 491 P.2d at 610 (relying on *Kettering* to hold that the predecessor to section 14-10-122(2) "require[d] an express statement that alimony [would] continue after remarriage").

¶ 23    In *Hahn*, for example, a division of this court held that a provision providing that maintenance was "not . . . subject to modification for any reason except the death of the wife" constituted "an express provision" continuing maintenance after remarriage. 628 P.2d at 176.  The *Hahn* division reasoned that although the provision in question did "not explicitly provide for continuation or termination of maintenance in the event of remarriage, nevertheless, it indicate[d] that it was the contemplation of the

11

parties that only the wife's death would absolve the husband of liability for payment of maintenance." *Id.* In other words, the provision in *Hahn* expressed "by clear implication" the parties' intent that maintenance payments would continue even if the recipient remarried.

¶ 24 In contrast, requiring a writing to specifically mention remarriage to stop maintenance payments from automatically terminating would be contrary to the plain language of the statute, as the General Assembly has not evinced an intent to require any particular language to satisfy the "otherwise agreed in writing" requirement. § 14-10-122(2)(a). Doing so would also be contrary to the bedrock principle that "[t]he primary goal of contract interpretation is to determine and give effect to the intent of the parties," and, therefore, courts "should not allow a hyper-technical reading of the language in a contract to defeat the intentions of the parties." *Ad Two*, 9 P.3d at 376-77.

¶ 25 Accordingly, we hold that section 14-10-122(2)(a)(III) does not require any particular language for parties to agree that maintenance will continue upon remarriage; all that is required is a writing that "expressly or by clear implication provide[s] that the

payments will continue after" the recipient spouse remarries. *Williams*, ¶ 16.

## E. Application

¶ 26 For the reasons explained above, we reject husband's contention that the separation agreement in this case needed to specifically include the term "remarriage" to define the circumstances under which maintenance "may not be . . . terminated." In our view, the agreement clearly demonstrates that the parties "otherwise agreed" that section 14-10-122(2)(a)(III)'s remarriage provision would not automatically terminate husband's maintenance obligations.

¶ 27 Even if we were to agree with husband that the language in section four specifying that maintenance is "contractual in nature and shall not be modified in the future" is, by itself, insufficient to overcome the termination of maintenance under section 14-10-122(2)(a)(III), *see Cerrone*, ¶¶ 18-20, we must read the separation agreement "as a whole, and in context, to determine the meaning of [its] terms," *id.* at ¶ 19. Thus, section four does not end our analysis.

¶ 28    We, like the district court, view the parties' handwritten addition in section five as dispositive. Husband's agreement to pay wife "the set amount" of $108,000 over seventy-two months, when combined with the next sentence providing that their agreement "may not be . . . terminated," is a clear acknowledgment that husband will pay wife a total of $108,000 in maintenance regardless of any later events that could trigger termination, including wife's remarriage.

¶ 29    In this respect, the language in this separation agreement is distinguishable from the language in *Cerrone* that failed to overcome the statutory termination of maintenance upon remarriage. *See id.* at ¶¶ 3, 21-23. Specifically, the maintenance provision in *Cerrone*, ¶ 3, did not explicitly prohibit "termination" and instead only stated that maintenance was "non-modifiable," whereas the agreement here, in addition to prohibiting modification, expressly provides for a "set amount" of maintenance that "may not be . . . terminated." Put differently, unlike the agreement in *Cerrone*, the separation agreement here provides "by clear implication . . . that the [maintenance] payments will continue

14

after" wife remarries, despite its failure to specifically mention remarriage. *Williams*, ¶ 16.

¶ 30    To hold otherwise, as husband asks us to do, would largely render the language in section five meaningless. *See Gagne*, ¶ 53; *see also Pepcol*, 687 P.2d at 1313 (holding that a contract "is to be interpreted in its entirety with the end in view of seeking to harmonize and to give effect to all provisions").

¶ 31    Accordingly, we conclude that the parties "otherwise agreed in writing" under section 14-10-122(2)(a)(III) that the automatic termination on remarriage provision does not apply.

### III.    Appellate Attorney Fees and Costs

¶ 32    Wife requests her appellate attorney fees under section 14-10-119, C.R.S. 2025, due to the alleged financial disparities between the parties. Because the district court is better equipped to determine the factual issues regarding the parties' current financial resources, we remand for the district court to determine whether an award of appellate attorney fees is appropriate. *See In re Marriage of Alvis*, 2019 COA 97, ¶ 30.

¶ 33    However, wife is entitled to an award of her appellate costs. *See* C.A.R. 39(a)(2) (costs are taxed against the appellant if a

judgment is affirmed).  Accordingly, she may pursue those costs in the district court by following the procedure set forth in C.A.R. 39(c)(2).

## IV.  Disposition

¶ 34     We affirm the order and remand the case to the district court for further proceedings concerning wife's request for appellate attorney fees and costs.

JUDGE TOW concurs.

JUDGE SULLIVAN specially concurs.

JUDGE SULLIVAN, specially concurring.

¶ 35    I agree with the majority that the parties' separation agreement requiring husband to pay wife a "set amount" of maintenance — and specifying that it could "not be modified or terminated" — constituted an agreement in writing under section 14-10-122(2)(a)(III), C.R.S. 2025, that overcame the statutory presumption against continuing maintenance after a recipient spouse remarries. I write separately, however, to underscore the unusually muddy state of our court's precedent on this issue and to urge the supreme court to provide much-needed clarity.

¶ 36    Section 14-10-122(2)(a)(III) states that, "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon . . . [t]he remarriage of or the establishment of a civil union by the party receiving maintenance."[1] For more than fifty years, divisions of this court have ping-ponged back and forth between different, and often conflicting, answers to a deceptively simple question: Does the

---

[1] Like the majority, I refer only to the recipient spouse's remarriage because those are the facts presented by this case. But the statute applies equally when the maintenance recipient establishes a civil union.

17

statute demand an express reference to "remarriage" in the parties' separation agreement for the payor spouse's maintenance obligation to continue after the recipient spouse remarries?

¶ 37 In *Spratlen v. Spratlen*, 491 P.2d 608, 610 (Colo. App. 1971), for example, the division interpreted section 14-10-122(2)'s predecessor to require "an express statement that [maintenance] continue after remarriage." The division in *In re Marriage of Hahn*, 628 P.2d 175, 176 (Colo. App. 1981), however, backtracked from *Spratlen*'s narrow reading, concluding that an explicit reference to "remarriage" in the separation agreement wasn't necessary for the husband's maintenance payments to continue. Rather, the agreement's provision that *only* the wife's death would terminate the husband's maintenance obligation was sufficient to overcome the statutory presumption. *Id.* Twenty years later, the division in *In re Marriage of Parsons*, 30 P.3d 868, 869 (Colo. App. 2001), pulled back from *Spratlen* even further, holding that a nonmodification clause alone "is sufficient to overcome the statutory presumption that maintenance terminates upon the recipient's remarriage." The division explained that although "express language" regarding terminating maintenance is

"preferable," the omission of such language "is not fatal if the intent is evident from the agreement . . . as a whole." *Id.*

¶ 38 Then came *In re Marriage of Cerrone*, 2021 COA 116, ¶ 20. The division in *Cerrone* hurled the pendulum back toward *Spratlen,* concluding that a separation agreement "must include an 'express provision' that maintenance will continue even if the recipient spouse remarries." *Id.* (quoting *Hahn,* 628 P.2d at 176). Such provision, the division explained, must be "unmistakably clear" that the parties have "otherwise agreed" under section 14-10-122(2)(a)(III) that the "automatic termination on remarriage provision will not apply to their maintenance award." *Cerrone,* ¶ 20. The *Cerrone* division thus declined to follow *Parsons'* holding that a nonmodification clause alone is sufficient to demonstrate the parties' agreement that maintenance will survive the recipient spouse's remarriage. *Id.*

¶ 39 Today, the majority again does an about-face, tacking closer to where things stood under *Hahn.* The majority concludes, correctly in my view, that section 14-10-122(2)(a)(III) doesn't demand any particular magic words for maintenance to continue after the recipient spouse remarries. Instead, the separation agreement need

only expressly *or by clear implication* provide that maintenance will continue after the recipient spouse remarries. *Supra* ¶ 20. In so holding, the majority declines to follow *Cerrone* to the extent it requires specific mention of the recipient spouse's remarriage in the separation agreement.

¶ 40 Given this whipsawing by divisions of this court, I worry that parties, attorneys, and trial courts will remain without settled guidance regarding section 14-10-122(2)(a)(III)'s requirements absent supreme court intervention. As this case illustrates, the divisions' divergent interpretations will inevitably lead to inconsistent outcomes in similar cases, contrary to the General Assembly's stated intent. *See* § 14-10-104(1), C.R.S. 2025 (the legislature's "general purpose" in enacting the Uniform Dissolution of Marriage Act is to promote uniformity of the law). And without clarity on the statute's requirements, parties in domestic relations cases will continue to face drawn out litigation, added legal expenses, and unpredictable results. Absent legislative action, only the supreme court can remedy these concerns and resolve the conflict in this court's precedent. *See Digit. Landscape Inc. v. Media*

*Kings LLC*, 2018 COA 142, ¶ 68 (one division of the court of appeals isn't bound by another division's decision).

¶ 41 Counsel, of course, can mitigate the uncertainty presented by this court's clashing decisions by including an explicit provision in their client's separation agreement detailing what occurs if the spouse receiving maintenance remarries. *See Parsons*, 30 P.3d at 869 ("[E]xpress language" regarding terminating maintenance "is preferable."). But that provides little solace for parties who have already signed their separation agreements. Nor does it solve the problem for parties who, as here, are navigating the legal system without the benefit of counsel when finalizing their dissolution. *See* Colo. Jud. Branch, *Cases and Parties without Attorney Representation in Civil Cases: Fiscal Year 2025*, at 4 (July 8, 2025), https://perma.cc/G6V3-RD95 (estimating that seventy-six percent of parties in domestic relations cases didn't have attorney representation in fiscal year 2025).

¶ 42 Accordingly, I urge the supreme court to grant review in an appropriate case to resolve the conflict in this court's precedent over section 14-10-122(2)(a)(III)'s requirements.