In re the **MARRIAGE OF James L. Sjerven, personal representative of the Estate of James C. Piper, Appellee,**

**and**

**Ann A. PIPER, Appellant.**

**No. 90CA0949.**

Colorado Court of Appeals,
Div. III.

Oct. 24, 1991.

Hall & Pearce, P.C., Richard M. Hall, Grand Junction, for appellee.

LaCroix & Alvillar, P.C., Thomas R. LaCroix, Laurie Noble, Grand Junction, for appellant.

Opinion by Judge TURSI.

In this dissolution of marriage action, Ann A. Piper (wife) has appealed the trial court's award of spousal maintenance and its determination that the interest of James C. Piper (husband) in a group medical practice had no value and therefore was not subject to equitable distribution. The issue of spousal maintenance for reasons hereinafter discussed is no longer before us, and we reverse the property division.

The marriage of the parties was dissolved in 1990 after more than twenty years of marriage. Both parties were college students at the time of their marriage in 1968. The following year, wife graduated and began work as a teacher while husband attended medical school and completed an internship and residency in pediatrics.

In 1977, the parties moved to Grand Junction, Colorado, where Dr. Piper and two other pediatricians formed a group practice incorporated as "Pediatrics 18 & Under." Between 1984 and 1987, the corporation generated gross annual revenues of between $477,681 and $545,907. On January 1, 1988, the firm merged with another pediatric group practice and incorporated under the name of "Western Colorado Pediatrics Association."

The new group practice consisted of Dr. Piper and four other shareholders, two part-time salaried physicians, and one nurse practitioner. At the time of hearing, in 1989, the physicians associated with Dr. Piper's group practice were the only licensed, practicing pediatricians in Grand Junction.

At trial, wife presented the testimony of a certified public accountant who testified that husband's stock in the professional corporation had a value of $95,000 to $100,000, including goodwill of $40,000 to $45,000. The CPA valued the tangible assets separately, averaging the corporation's cash balances, accounts receivables, and liabilities, as reflected on the firm's 1986 to 1988 tax records. In valuing goodwill, the CPA relied upon the stock redemption provisions of the shareholders' agreement and also utilized two income analysis formulas to obtain comparable valuations.

The husband did not present expert testimony. He contended, however, that the practice had no goodwill. He also estimated, without substantiation, that the practice either had no "cash value" or, alternatively, that it had a value of zero *excluding* the accounts receivable.

In determining that the group practice had no value, the trial court accepted the husband's opinion and rejected the opinion of the wife's expert witness. On appeal, the wife challenges the court's valuation and also contests the court's order denying her spousal maintenance.

I.

In regard to issue of maintenance, we note that Dr. Piper died in January 1991, subsequent to perfection of the wife's appeal. Because of Dr. Piper's death, we have no jurisdiction to address the question of maintenance and are limited to consideration of the property division only.

In the absence of an agreement or court order to the contrary, the obligation to pay maintenance is purely personal and does not survive the death of the obligor

spouse. *See* § 14–10–122(2) C.R.S. (1987 Repl.Vol. 6B); *Doll v. Doll,* 140 Colo. 546, 345 P.2d 723 (1959).

■ If, however, as here, a final dissolution decree affecting property rights was entered, a spouse's subsequent death during the pendency of appeal does not abate the appeal and the appellate court may properly review the propriety of the property distribution. *Israel v. Arthur,* 6 Colo. 85 (1881); *Wallace v. Wallace,* 483 P.2d 418 (Colo.App.1971) (not selected for official publication); *see generally* § 13–20–101, C.R.S. (1987 Repl.Vol. 6A).

Accordingly, our discussion is limited to the valuation and distribution of marital property.

## II.

The wife contends that the trial court's refusal to assign any value to the husband's professional corporation is contrary to the evidence and erroneous as a matter of law. We agree.

■ The value of a professional practice acquired during marriage is subject to equitable distribution. *In re Marriage of Martin,* 707 P.2d 1035 (Colo.App.1985).

■ In valuing a business or professional practice, the trial court must consider both the tangible and intangible assets, including the accounts receivable, the value of work in progress, and goodwill. *See In re Marriage of Nichols,* 43 Colo.App. 383, 606 P.2d 1314 (1979). In addition, the court must properly consider the price, or pricing formula, fixed in a corporate or partnership buy-sell agreement. *In re Marriage of Keyser,* 820 P.2d 1194 (Colo.App.1991).

Here, the shareholders' agreement established a price of $100 per share, or $100,000 per shareholder, for the redemption of a shareholder's stock in the event of death. The agreement provided for periodic review and readjustment of the redemption price, and it further provided:

The parties agree that the agreed price includes any factor of value referable to *the goodwill of the Corporation as a going concern,* and also includes the cash surrender value of any insurance policies owned by the Corporation on the lives of the Stockholders. The parties further agree to be bound by the purchase price as determined in accordance with this paragraph. (emphasis added)

In valuing husband's stock, the wife's expert relied upon the price established under the stock redemption agreement. In addition, the expert obtained comparable valuations using both a capitalized earnings approach and a multiple of gross income approach based upon a nationwide market survey of medical practice sales.

The trial court rejected the expert's valuation on the ground that there was no evidence—apart from the stock redemption agreement itself—that Dr. Piper and the other shareholders had actually "bargained" for the value established in the stock redemption agreement. We find this analysis to be erroneous.

■ The interpretation of a contract requires the court to ascertain the parties' intent at the time the document was executed, and that intent is to be determined primarily from the instrument itself. *Hefley Ranch, Inc. v. Stewart,* 764 P.2d 415 (Colo.App.1988).

■ Parol evidence of intent of the parties is generally admissible if the contract terms are ambiguous. *Martynes & Associates, No. 1 v. Devonshire Square Apartments,* 680 P.2d 246 (Colo.App.1984).

■ Because the interpretation of a written contract is a question of law, we are not bound by the trial court's findings and conclusions. *Radiology Professional Corp. v. Trinidad Area Health Ass'n,* 195 Colo. 253, 577 P.2d 748 (1978).

■ Here, the shareholders' agreement states clearly and unequivocally that the "parties *agree* that the agreed price includes any factor of value referable to the goodwill of the Corporation as a going concern." (emphasis added) In light of such language, we conclude that the agreement is clear, unequivocal, and unambiguous on its face and that the trial court erred as a matter of law in considering the husband's

contradictory parol evidence of the shareholders' intent.

In addition, we agree that it was error for the trial court to exclude the firm's accounts receivables from its valuation of the medical practice.

 A spouse's compensation which is deferred until after the dissolution, but fully earned during the marriage, is marital property. *See In re Marriage of Anderson,* 811 P.2d 419 (Colo.App.1990) (professional sports contract); *In re Marriage of Vogt,* 773 P.2d 631 (Colo.App.1989) (contingent attorney fees); *In re Marriage of Bayer,* 687 P.2d 537 (Colo.App.1984) (contingent attorney fees); and *In re Marriage of Johnson,* 40 Colo.App. 250, 576 P.2d 188 (1977) (real estate commissions).

The record reflects that "Pediatrics 18 and Under" had an average accounts receivable of $178,000 over a three-year period *in addition* to the amounts paid as salaries to the shareholders. The record also reveals that the new group practice, Western Colorado Pediatrics Association, reported accounts receivable of $307,000 at the end of its first year in business, in addition to the salaries paid to shareholders and employees.

Accordingly, the accounts receivables should have been included as one component in the overall valuation of the medical practice.

Since we cannot determine the property distribution the court would have made had it utilized proper valuations and included all marital property, and since the differences in valuations and the amount of exclusions were substantial, the division of property cannot stand. *In re Marriage of Femmer,* 39 Colo.App. 277, 568 P.2d 81 (1977).

### III.

Wife next contends that the trial court failed to consider the factors enumerated under § 14–10–113, C.R.S. (1987 Repl.Vol. 6B) in dividing the marital property. We observe that the court's order contains no findings reflecting its consideration of the statutory factors.

In the absence of appropriate factual findings, we are unable to determine whether the trial court abused its discretion. *In re Marriage of Fleet,* 701 P.2d 1245 (Colo.App.1985). Therefore, on remand the court is directed to enter findings reflecting its consideration of the statutory factors, including, specifically, the wife's contributions to Dr. Piper's professional education and career. *See In re Marriage of Olar,* 747 P.2d 676 (Colo.1987).

That portion of the judgment concerning the valuation and distribution of marital property is reversed, and the cause is remanded for further proceedings consistent with the views contained herein.

CRISWELL and PLANK, JJ., concur.