COLORADO COURT OF APPEALS      **2017COA120**

Court of Appeals No. 16CA1577
Arapahoe County District Court No. 96DR611
Honorable Ben L. Leutwyler, Judge

Carl M. Williams, deceased, by Michael Williams, Personal Representative of the Estate of Carl M. Williams,

Appellant,

and

Roberta-Diane J. Williams, n/k/a Roberta-Diane J. Perna,

Appellee.

ORDER AND JUDGMENTS REVERSED
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE RICHMAN
Ashby and Vogt*, JJ., concur

Announced September 7, 2017

Nevin A. Seeger, P.C., Nevin A. Seeger, Loveland, Colorado; The Vasilco Law Group, P.C., Patrick M. Vasilco, Denver, Colorado, for Appellant

Litvak Litvak Mehrtens and Carlton, P.C., Ronald D. Litvak, Luke S. Abraham, Denver, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1    Michael Williams, Personal Representative of the Estate of Carl M. Williams (husband), appeals the district court's order obligating the estate to continue making monthly maintenance payments to Roberta-Diane J. Williams, now known as Roberta-Diane J. Perna (wife), after husband's death, and the two support judgments entered thereon.  We reverse and remand the case to the district court to enter an order requiring the wife to refund to the estate the amount of monthly payments the estate has paid to wife and the fees it has paid to her attorney, and to determine and award the estate its reasonable attorney fees incurred in the matter.

## I.  Background

¶ 2    Husband and wife married in November 1988, when wife was forty-two years old and husband was sixty years old.  Prior to entering into the marriage, husband and wife executed a premarital agreement.  The premarital agreement provided at paragraph 4(b)(3) that "[husband] shall be required to pay to [wife] during her lifetime, and [wife] shall be entitled to receive from [husband] during her lifetime, monthly payments" on the filing of a petition for dissolution, in an amount determined based on the number of years the parties were married at the time the petition was filed.  Also,

under the premarital agreement, in exchange for the monthly payments, wife waived maintenance as determined under section 14-10-114, C.R.S. 2016.

¶ 3     Husband and wife's eight-year marriage ended in 1996, and their separation agreement was incorporated into the decree. The separation agreement provided in relevant part as follows:

> In accordance with the provisions of paragraph 4.(b)(3) of the Premarital Agreement, the Husband shall pay to the Wife monthly payments in the amount of $4,379, commencing thirty (30) days after the filing of this action for dissolution, and continuing monthly thereafter until the remarriage or death of the Wife, whichever first occurs. The Parties agree that the amount of this monthly payment has been correctly calculated in accordance with the provisions of the Premarital Agreement, and that the Premarital Agreement provides the amount of these payments shall be nonmodifiable for the period of time that the Husband is obligated to make these payments to the Wife.

¶ 4     The agreement also provided that except as specified in the agreement, the parties release each other and their estates "from every right, claim, and demand of whatever kind or nature." And it provided that it "is binding upon and shall inure to the benefit of the heirs, assigns, and personal representatives of the parties."

¶ 5    After the 1996 dissolution, husband consistently made the monthly payments to wife under the agreement until his death on November 27, 2015.  Wife received a final payment on December 1, 2015, but no payments thereafter.  She then filed a suggestion of death, a motion to substitute the estate for husband in the dissolution action, and a verified entry of support judgment, asserting that the estate was obligated to make the monthly payments to her and had failed to do so.  The estate responded that the parties had not agreed to continue the monthly payments beyond husband's death and therefore the estate had no obligation to continue making them.

¶ 6    Both parties filed briefs in the district court on the legal issue of whether and under what circumstances a monthly maintenance obligation continues after the death of the obligor spouse.  Wife then filed another verified entry of support judgment, reflecting the additional payments that had accrued and had not been paid.

¶ 7    The district court ruled that the premarital and separation agreements obligated the estate to continue making the monthly payments to wife until her death or remarriage.  The court further awarded wife her attorney fees and costs under the prevailing party

attorney fee provisions of both agreements. The parties then stipulated that the estate would pay wife the amount of the past due maintenance payments, make ongoing payments as they came due, and pay her attorney all fees owed to date, but that the estate could appeal the district court's orders and seek to recoup all funds paid in the event its appeal was successful.

## II. The Estate's Obligation to Continue Making the Monthly Maintenance Payments to Wife After Husband's Death

¶ 8    The estate contends that the district court erred in ruling that husband's obligation under the premarital and separation agreements to make monthly payments to wife survived his death as an obligation of his estate. We agree.

### A. Legal Standards

¶ 9    Under the version of the applicable statute in effect at the time of the premarital agreement, "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance." § 14-10-122(2),

C.R.S. 1988;[1] *see In re Marriage of Piper*, 820 P.2d 1198, 1199-1200 (Colo. App. 1991) ("In the absence of an agreement or court order to the contrary, the obligation to pay maintenance is purely personal and does not survive the death of the obligor spouse.").[2]

¶ 10    Accordingly, the issue on appeal, as it was in the district court, is whether husband and wife "otherwise agreed in writing" in their agreements, or expressly provided in their decree, that the monthly payments to wife would survive husband's death as a continuing obligation of his estate.  There are no post-Uniform

---

[1] The current version of the statute, § 14-10-122(2)(a), C.R.S. 2016, is similar:

> Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the earlier of:
> (I)    The death of either party;
> (II)    The end of the maintenance term . . . ;
> (III)   The remarriage of or the establishment of a civil union by the party receiving maintenance; or
> (IV) A court order terminating maintenance.

[2] To the extent wife suggested for the first time at oral argument that the payments were not maintenance and could be enforced against the estate merely on a contractual basis, we will not address that argument because it was not raised in the district court or in the answer brief.  *See People v. Becker*, 2014 COA 36, ¶ 23 (declining to consider argument raised for the first time at oral argument).

Dissolution of Marriage Act cases delineating what the statute requires to constitute an agreement to continue the obligation to pay maintenance after the death of the obligor spouse. Thus, we are called upon to interpret this statutory language.

¶ 11 We review de novo the district court's interpretation of the statute, *see In re Marriage of Gross*, 2016 COA 36, ¶ 8, and of the premarital and separation agreements, *see In re Marriage of Crowder*, 77 P.3d 858, 860 (Colo. App. 2003). In doing so, we need not defer to the district court's interpretation. *Id.*; *cf. In re Estate of Houston*, 521 P.2d 182, 183 (Colo. App. 1974) (not published pursuant to C.A.R. 35(f)) (appellate court was not bound by trial court's interpretation of settlement agreement regarding whether maintenance payments would continue beyond obligor spouse's death).

## B. Analysis

¶ 12 The district court found that the premarital and separation agreement provisions for monthly payments to wife "during her lifetime" and "until the remarriage or death of the Wife" "express[ed] a clear intent that Wife would receive these payments even after Husband's death." We do not agree with this interpretation.

6

Whereas these payment provisions reflect clear agreement regarding the duration of the monthly payments relative to the life or marital status of the wife, they say nothing about what would happen on husband's death.

¶ 13     Although there is no published Colorado case applying section 14-10-122(2) and addressing agreement language like that used here, two cases predating the statute and applying similar common law principles are instructive — *In re Estate of Kettering*, 151 Colo. 202, 376 P.2d 983 (1962), and *International Trust Co. v. Liebhardt*, 111 Colo. 208, 139 P.2d 264 (1943).

¶ 14     Under the common law, as under section 14-10-122(2), the obligation to pay spousal maintenance "[o]rdinarily" ended with the obligor's death, but the obligor could agree that payments would continue thereafter and be payable from the obligor's estate. *Kettering*, 151 Colo. at 206, 376 P.2d at 986.  Such an agreement was enforceable "if it expressly or by clear implication provid[ed] that the payments shall continue" after the obligor's death.  *Id.* at 206-07, 376 P.2d at 986; *see Houston*, 521 P.2d at 183-84 (citing *Kettering* and finding agreement provisions "insufficient to overcome the presumption" that alimony payments end with the obligor

spouse's death); *Young v. Young*, 475 P.2d 350, 351 (Colo. App. 1970) (not published pursuant to C.A.R. 35(f)) (relying on *Kettering* and finding no "clear indication" under the separation agreement that the obligor spouse's estate was obligated to continue making the monthly maintenance payments).

¶ 15    In *Kettering*, the parties' agreement provided that the monthly support payments would continue "so long as the wife may live and remain unmarried." 151 Colo. at 204, 376 P.2d at 984-85. The supreme court held that "the phrase 'so long as the wife may live' did not evidence clear and express intent that the payments be a charge upon the [husband's] estate" after his death. *Id.* at 207, 376 P.2d at 986. In *Houston*, 521 P.2d at 183, and *Young*, 475 P.2d at 351, divisions of this court similarly ruled that agreement provisions for monthly alimony payments until the wife's death or remarriage were not sufficient to obligate the husband's estate after his death. And, in *International Trust*, the supreme court held that the husband's estate was liable for monthly payments to the wife when the separation agreement expressly required such payments "after the death of the husband." 111 Colo. at 217-19, 139 P.2d at 268-69.

¶ 16    Citing to *In re Marriage of Koktavy*, 44 Colo. App. 305, 612 P.2d 1161 (1980), wife argues that the statute supersedes the common law rule.  But even assuming that is correct, we still find the holdings of the pre-statute cases instructive in delineating what type of writing would be required under the statute to continue the payment of maintenance after the death of the obligor.  Wife argues that any writing suffices, and the words in the premarital agreement and separation agreement are sufficient.  But this approach would undermine the purpose of the statute, which is to require a writing that expressly specifies the parties' agreement.  Instead we conclude, as did the common law cases, that the writing must expressly or by clear implication provide that the payments will continue after the death of the obligor.  As noted, in those cases, nearly identical language to that used here was found insufficient to expressly and clearly provide for continuance of maintenance after the death of the obligor.

¶ 17    And, our decision is reinforced by decisions from other jurisdictions concluding that such language is not effective to continue maintenance posthumously.  *See Herbst v. Herbst*, 153 So. 3d 290, 293 (Fla. Dist. Ct. App. 2014) ("[L]anguage providing

9

that the husband shall pay alimony 'until wife becomes remarried or deceased' does not indicate an intent to bind the husband's estate to continue to pay alimony after his death."); *Findley v. Findley*, 629 S.E.2d 222, 224-29 (Ga. 2006) (settlement agreement provision for alimony until the wife dies or remarries did not establish clear intent that such payments would continue after the husband's death); *In re Estate of Lundahl*, 773 N.E.2d 756, 762 (Ill. App. Ct. 2002) (agreement that the wife shall receive monthly payments for "the balance of her natural life" was not sufficient to bind the husband's estate); *In re Estate of Jones*, 434 N.W.2d 130, 131-32 (Iowa Ct. App. 1988) (decree providing for alimony payments "until such time as [the wife] dies or remarries" did not express clear intent to hold the husband's estate liable); *Witt v. Witt*, 350 N.W.2d 380, 382 (Minn. Ct. App. 1984) ("We hold an expression such as 'so long as obligee shall live' does not, without more, expressly provide for maintenance after the obligor's death."); *Bird v. Henke*, 395 P.2d 751, 753 (Wash. 1964) (the phrase "so long as [the wife] shall live" did not, standing alone, constitute a clear expression of intent that alimony be a continuing obligation of the husband's estate "in derogation of his testamentary rights"); *but see*

10

*In re Last Will & Testament of Sheppard*, 757 So. 2d 173, 174-76 (Miss. 2000) (construing agreement provision for alimony payments terminating on the wife's death or remarriage, with no mention of the husband's death, as imposing the obligation on his estate after his death).

¶ 18    The district court specifically noted, as support for its interpretation, the premarital agreement's language specifying not only that husband was required to pay but also that *wife was entitled to receive* the monthly payments during her lifetime. However, the premarital agreement entitled wife to receive the monthly payments specifically "from Carl," not also from his estate after he had died.  Likewise, the separation agreement expressly provides that "Husband shall pay to the Wife" the monthly payments.  Neither agreement said anything about the estate making the payments after husband's death.  *See also Bird*, 395 P.2d at 753 (if phrase in agreement providing for alimony "so long as [the wife] shall live" was to be interpreted literally to apply even after the husband's death, "then justice requires an equally literal meaning be attached to the preceding phrase, 'to be paid by the [husband]'").

¶ 19　　In addition, the separation agreement provided at its outset that husband and wife "each release[] the other and the other's estate from every right, claim, and demand of whatever kind or nature which he or she now has *or may have in the future* against the other or the other's estate, whether as surviving spouse, heir-at-law, or otherwise." (Emphasis added.) To be sure, this section is introduced by the phrase "[e]xcept as hereinafter specified," but the later provision for maintenance, did not specify that the estate would be liable for the obligation after the death of husband.

¶ 20　　The district court also relied on the general provision at the end of both agreements providing that the agreements are binding on and inure to the benefit of the parties' heirs, assigns, and personal representatives. We conclude that such a general provision does not bind the estate to continue the maintenance payments to wife, without a clear indication *in the maintenance provision of the agreement* that such payments are intended to continue after husband's death. *See Houston,* 521 P.2d at 183-84 (interpreting agreement as a whole as not intending to obligate the husband's estate to pay alimony after his death, despite general provision that agreement's terms were binding on the parties' legal

representatives); *see also Kettering*, 151 Colo. at 206, 209, 376 P.2d at 986-87 (interpreting general clause of agreement binding heirs, executors, and administrators "so far as appropriate" as insufficient to obligate spouse's estate to continue alimony payments). And although this general provision stated that the agreement shall "inure to the benefit of the estate," the agreement also released the parties' estates as set forth above.

¶ 21    Therefore, we conclude that husband's personal obligation to pay ended when he died, absent a clear indication to the contrary, which, in our view, neither the premarital nor separation agreement provided. *See* § 14-10-122(2), C.R.S. 1988; *Piper*, 820 P.2d at 1199-1200.

¶ 22    In support of the district court's order, wife analogizes to cases involving a spouse's remarriage where the inclusion of an unequivocal nonmodification clause was ruled sufficient to continue a maintenance obligation after the recipient spouse's remarriage. However, these cases are materially distinguishable from the present case. In *In re Marriage of Parsons*, 30 P.3d 868, 868-70 (Colo. App. 2001), the agreement provided that maintenance was "*contractual in nature and non-modifiable* by any court," and a

division of this court held that such language was sufficiently unequivocal to overcome the presumption that maintenance would end on the recipient spouse's remarriage. Similarly, in *In re Marriage of Hahn*, 628 P.2d 175, 176 (Colo. App. 1981), the non-modification clause provided that "payments will not be subject to modification for any reason except the death of the wife," and the division found such language sufficient to continue the obligation after the wife's remarriage.

¶ 23    In contrast, the separation agreement here provided only that *the amount of* wife's monthly payments was nonmodifiable *for the period* that husband was obligated to make the payments. Accordingly, without a clear expression of intent to continue the payment obligation beyond husband's lifetime, the period that husband was obligated to pay, during which the amount of the payments was nonmodifiable, ended with his death.

¶ 24    Because we reverse the order obligating the estate to continue paying maintenance, we also reverse the two support judgments entered after husband's death. We reject wife's argument that the estate did not preserve the issue of the judgments because it did not list the issue in its statement of the issues in the notice of

appeal. The listing of issues in the notice of appeal is advisory only and does not restrict the appellant from arguing additional issues in the opening brief, *see* C.A.R. 3(a), (d)(3); *Casserly v. State*, 844 P.2d 1275, 1282 (Colo. App. 1992), assuming such issues were raised in the district court, as they were here through the estate's argument that it was not obligated to continue making the monthly payments to wife after husband's death.

### III. Attorney Fees and Costs

¶ 25    The estate also contends that the district court erroneously awarded wife attorney fees under the prevailing party provisions of the premarital and separation agreements. Based on our disposition, we agree that the award of attorney fees and costs to wife must be reversed. In addition, the estate contends that it should have been awarded its own attorney fees under the prevailing party provisions of the agreements, and again, based on the disposition, we agree.

¶ 26    Both the premarital and separation agreements provide for attorney fees and costs to the prevailing party in any enforcement action thereunder. The district court awarded attorney fees and costs to wife under these provisions. It did not address her

15

alternative request for fees and costs under section 14-10-119, C.R.S. 2016.  Because of our disposition to reverse the district court's order that the estate is obligated to continue paying wife maintenance after husband's death, we must also reverse the award of fees and costs that was predicated on that order.  And we remand the case for the court to order any such fees that have already been paid refunded to the estate, and to instead award attorney fees and costs, including appellate fees and costs, to the estate under the agreements.

¶ 27     Also based on the disposition, we deny wife's request for appellate fees under the agreements.  To the extent that she alternatively requests appellate fees under section 14-10-119, we also deny that request.  Under the premarital agreement, wife waived her right to receive fees under section 14-10-119.  And, under both agreements, attorney fees incurred for enforcing the agreements' terms are to be awarded to the prevailing party — here, the estate, which was substituted for husband in the dissolution action.

## IV.  Conclusion

16

¶ 28     The order and judgments are reversed, and the case is remanded for an order requiring the wife to refund to the estate the amount of the payments the estate has made to wife and the attorney fees it has paid to her attorney, and to determine and award the estate its reasonable attorney fees and costs incurred in the matter.

JUDGE ASHBY and JUDGE VOGT concur