IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 22-879

Filed 3 October 2023

Mecklenburg County, No. 22-CVS-4003

KATHLEEN M. CUSICK, Plaintiff,

v.

THE ESTATE OF KEVIN C. LONGIN,
By and through its ADMINISTRATRIX,
ANNE MARIE LONGIN, Defendant.

Appeal by plaintiff from order entered 21 July 2022 by Judge Reggie McKnight
in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 February
2023.

*Donna P. Savage and Matthew A. Freeze for the plaintiff-appellant.*

*Alexander W. Warner for the defendant-appellee.*

STADING, Judge.

Plaintiff Kathleen Cusick ("plaintiff") appeals from the trial court's order
granting defendant-estate's motion to dismiss. For the reasons below, we affirm.

## I. Background

In 1991, plaintiff and decedent Kevin Longin ("decedent") married in the state
of Washington. In 2018, they divorced in the state of Colorado. As part of their
divorce, the District Court of Chafee County, Colorado, entered a Decree of
Dissolution of Marriage on 7 September 2018. The decree incorporated two

Memorandums of Understanding ("MOU"), documenting the terms of the Separation Agreement reached by the parties through mediation. The first MOU, signed by the parties on 5 July 2018, included a specific list of marital assets and did not refer to the income of either spouse. Under that MOU, decedent assumed an obligation to make monthly payments of $2,000 to plaintiff over a period of sixty months.

On 31 August 2018, the parties amended the MOU and the Separation Agreement. The parties noted that "[s]ubsequent to the Separation Agreement being filed, along with other necessary documents, [plaintiff] reported to the court that her attorney had not reviewed any of [decedent's] disclosure of assets or financial documents prior to mediation[.]" Plaintiff's review of decedent's disclosure of assets and financial documents led to "further negotiations" that prompted a change in paragraph 13 of the MOU and an extension of the payment obligation by twenty-four months, for a total of eighty-four months. The Separation Agreement specifically stated: "The payment of maintenance shall be deemed to be contractual in nature and shall not be modified for any reason. The Court shall be divested of all jurisdiction to modify maintenance after the entry of the permanent orders."

On 9 March 2021, decedent died intestate in Mecklenburg County, North Carolina. Decedent's sister, Anne Marie Longin, qualified as administratrix of his estate ("defendant-estate") on 9 June 2021. Before his passing, decedent made thirty-two monthly payments to plaintiff, totaling $64,000, in compliance with the Separation Agreement. At the time of decedent's passing, fifty-two monthly

payments remained, with a balance of $104,000.

On 16 September 2021, plaintiff made a claim in the amount of $104,000 against decedent's estate by hand-delivering the Written Statement of Claim to defendant-estate's attorney. In response, defendant-estate rejected plaintiff's claim. Also, plaintiff filed the Written Statement of Claim with the Mecklenburg County Clerk of Superior Court. Since the claim was rejected, plaintiff timely sued in Mecklenburg County Superior Court for $104,000 on 16 March 2022, within three months as required by N.C. Gen. Stat. § 28A-19-16.

Thereafter, defendant-estate moved for a dismissal of plaintiff's suit for several reasons under North Carolina's Rules of Civil Procedure—including the two arguments preserved for consideration on appeal—lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim upon which relief can be granted under Rule 12(b)(6). Defendant-estate maintained that plaintiff's failure to register the Colorado support order under N.C. Gen. Stat. § 52C-6-602, resulted in the trial court lacking subject matter jurisdiction. Additionally, defendant-estate contended that, under Colorado law, the estate no longer had an obligation to pay plaintiff's claim for $104,000 after decedent's death. Plaintiff countered that defendant-estate was not entitled to judgment as a matter of law because plaintiff stated a breach-of-contract claim under Colorado law. The trial court agreed with defendant-estate and granted its 12(b)(6) motion, dismissing plaintiff's complaint without prejudice. Plaintiff filed her notice of appeal with this Court on 19 August 2022.

On appeal, plaintiff contends that since the Separation Agreement contains a non-modification clause, she is still entitled to $104,000 in maintenance payments, even after the decedent's death. Defendant-estate disagreed, asserting that, under Colorado law, plaintiff is not entitled to posthumous maintenance. Moreover, defendant-estate argues that plaintiff's claim should be dismissed for lack of subject matter jurisdiction.

## II.     Jurisdiction

The trial court's grant of defendant-estate's 12(b)(6) motion to dismiss is a final order, and no other claims remain pending. Therefore, this Court has jurisdiction to hear plaintiff's appeal under N.C. Gen. Stat. § 7A-27(b) (2021).

## III.     Analysis

### A. Subject Matter Jurisdiction

As a preliminary consideration, we address defendant-estate's contention that the trial court did not have subject matter jurisdiction and this claim should be dismissed pursuant to N.C. Gen. Stat. § 1A-1, R. 12(b)(1) (2021). "Our review of a trial court's decision denying or allowing a Rule 12(b)(1) motion is *de novo* except to the extent that the trial court resolves issues of fact and those findings are binding on the appellate court if supported by competent evidence in the record." *Harper v. City of Asheville*, 160 N.C. App. 209, 215, 585 S.E.2d 240, 244 (2003) (internal quotation marks and citation omitted). However, "when considering a Rule 12(b)(1) motion—in contrast to a motion under Rule 12(b)(6)—a trial court is not confined to

- 4 -

the face of the pleadings, but may review or accept any evidence, such as affidavits, or it may hold an evidentiary hearing." *Id.* (internal quotation marks and citation omitted). In this case, the trial court's order does not address defendant-estate's challenge to subject matter jurisdiction.

Defendant-estate published a notice to creditors under N.C. Gen. Stat. § 28A-14-1 (2021) on 22 June 2021, noting that "all persons . . . having claims against [the] estate to present them . . . on or before the 30th day of September, 2021, or this notice will be pleaded in bar of their recovery." On 29 September 2021, plaintiff filed the Written Statement of Claim based on the remaining alimony payments. In reply, on 23 December 2021, defendant-estate sent a denial of the claim to plaintiff. On 16 March 2022, plaintiff filed a complaint for monies owed in Mecklenburg County Superior Court, claiming that jurisdiction was proper under N.C. Gen. Stat. §§ 1-75.4, 7A-240, and 28A-19-16 (2021). Defendant-estate countered, arguing that plaintiff's failure to register the foreign support order, as permitted by N.C. Gen. Stat. § 52C-6-602(a) (2021), deprived the trial court of subject matter jurisdiction.

Defendant-estate maintains that our decision in *Halterman v. Halterman* stands for the proposition that registration of the Colorado order is a prerequisite for the trial court to have subject matter jurisdiction. 276 N.C. App. 66, 855 S.E.2d 812 (2021). In *Halterman,* the order was issued in Florida, the defendant-appellee was a resident of Virginia, and the plaintiff-appellant and children were residents of North Carolina. *Id.* at 68, 855 S.E.2d at 813. Upon consideration of the defendant-appellee

motion to dismiss the plaintiff-appellant's petition to register a child support order for lack of subject matter jurisdiction, the trial court granted the defendant-appellee's motion to dismiss. *Id.* at 69, 855 S.E.2d at 814. On appeal, our Court noted the concerns implicated by registration under Chapter 52 of the North Carolina General Statutes, referred to as the Uniform Interstate Family Support Act ("UIFSA"), and the "essential differences in registration of foreign orders under" Chapter 50A of the North Carolina General Statutes, referred to as the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *Id.* at 76–77, 855 S.E.2d at 818–19. Ultimately, our Court affirmed the absence of subject matter jurisdiction "for purposes of child support modification or enforcement." *Id.* at 77, 855 S.E.2d at 819.

While *Halterman* is not squarely on point in addressing the present concern, our Court's opinion provides a level of guidance in attending to the significance of registering a foreign order that is subject to modification, which would also permit enforcement by the mechanism of contempt. *Id.* Furthermore, the considerations underlying the purpose of UIFSA are relevant to our determination:

> UIFSA introduced for the first time the principle of continuing, exclusive jurisdiction and the one-order system. The goal of this provision, like its corollary under the UCCJEA, makes only one support order effective at any one time. UIFSA also provides direct enforcement procedures that do not require assistance from a tribunal and limits modification more than it was under URESA.

3 Reynolds on North Carolina Family Law § 10.24 (2022) (internal quotation marks and citation omitted). The circumstances here provide that plaintiff is suing

defendant-estate for a breach of contract, seeking a remedy of a sum certain in response to the denial of a claim as anticipated under N.C. Gen. Stat. § 28A-19-16. Thus, the complaint alleges claims for "justiciable matters of a civil nature" and original general jurisdiction is vested in the trial division. N.C. Gen. Stat. § 7A-240. Moreover, given the amount in controversy, the superior court is the proper division within the trial division to adjudicate these claims. N.C. Gen. Stat. § 7A-243 (2021). Additionally, the concerns of multiple orders, confusion regarding modification, and necessity of enforcement by contempt anticipated by UIFSA are not present. Considering the foregoing, the trial court did not want of subject matter jurisdiction.

## B. <u>Failure to State a Claim</u>

Plaintiff argues that the trial court erred in granting defendant-estate's motion to dismiss under N.C. Gen. Stat. § 1A-1, R. 12(b)(6) (2021).

> The motion to dismiss under N.C. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. In ruling on the motion, the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted.

*Kohn v. Firsthealth of the Carolina's, Inc.*, 229 N.C. App. 19, 21, 747 S.E.2d 395, 397 (2013) (citation omitted).

It is well-settled that a claim may be dismissed under Rule 12(b)(6) when one of the following is satisfied: (1) the complaint, on its face, reveals that no law supports the claim; (2) the complaint, on its face, reveals a lack of facts sufficient to make a

valid claim; or (3) the complaint discloses some fact that necessarily defeats the claim. *Grich v. Mantelco, LLC*, 228 N.C. App. 587, 589, 746 S.E.2d 316, 318 (2013) (citation omitted). Like the standard applied to our analysis pursuant to Rule 12(b)(1), we review a trial court's Rule 12(b)(6) order of dismissal *de novo*. *Id.*

Beginning with our *de novo* determination, "[t]he general rule is that things done in one sovereignty in pursuance of the laws of that sovereignty are regarded as valid and binding everywhere[.]" *Muchmore v. Trask*, 192 N.C. App. 635, 639, 666 S.E.2d 667, 670–71 (2008), *review allowed, writ allowed*, 363 N.C. 374, 678 S.E.2d 666 (2009) (internal quotation marks and citation omitted). "North Carolina has long adhered to the general rule that . . . the law of the place where the contract is executed governs the validity of the contract." *Id.* at 639, 666 S.E.2d at 670 (citation omitted); *see also Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980) ("[T]he interpretation of a contract is governed by the law of the place where the contract was made." (citation omitted)). Accordingly, we will apply relevant governing Colorado law. *See Muchmore*, 192 N.C. App. at 639–40, 666 S.E.2d at 670.

Plaintiff urges us to accept the position that paragraph 13 of the MOU, entitled "Agreements Regarding Maintenance," genuinely addresses "property division." In making this argument, plaintiff asserts that a reading of the entire Separation Agreement leads to such a conclusion. However, viewing the agreement in its entirely shows that the parties intended for numerous other provisions to address property apportionment, and for paragraph 13 to directly concern future maintenance.

Additionally, plaintiff posits that Colorado law supports this position in requiring that a *court* "shall award maintenance only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment. . . ." Colo. Rev. Stat. § 14-10-114(3)(d) (2023). To the contrary, here, the parties were free to set terms as they pleased.

Thus, it is appropriate to apply the more relevant authority—Colorado's statute for modification and termination of maintenance, support, and property disposition. Colo. Rev. Stat. § 14-10-122(2)(a)) provides:

> Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the earlier of:
>
> I.     The death of either party;
>
> II.    The end of the maintenance term, unless a motion for modification is filed prior to the expiration of the term;
>
> III.   The remarriage of or the establishment of a civil union by the party receiving maintenance; or
>
> IV.    A court order terminating maintenance.

Colo. Rev. Stat. § 14-10-122(2)(a) (2023). Here, plaintiff contends that she and decedent agreed to extend the payments posthumously. Analogous to a federal circuit court sitting in diversity, "we are obliged to interpret and apply the substantive law of [the] state." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir. 1999). In conducting our *de novo* analysis, "we may of course consider all of the

authority that the state high court[ ] would, and we should give appropriate weight to the opinions of [its] intermediate appellate courts." *Id.* (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S. Ct. 1776, 1782 (1967)). We next look to available precedent in the appellate courts of Colorado.

In 2017, a division of the Colorado Court of Appeals considered facts similar to the present matter when deciding *In re Marriage of Williams*, in which a husband and wife divorced in Colorado, with the husband making "monthly [post-divorce] payments to [the] wife under the [separation] agreement until his death. . . ." 2017 COA 120M, ¶ 5, 410 P.3d 1271, 1273. After her former husband died, the wife petitioned his estate to continue the payments posthumously. *Id.* Upon declining to continue payments, the wife sued her former husband's estate. *Id.* at ¶¶ 5–6. The trial court "ruled that the premarital and separation agreements obligated the estate to continue making the monthly payments to the wife until her death or remarriage." *Id.* at ¶ 7, 410 P.3d at 1273. The estate then appealed, asserting that the trial court "erred in determining that husband's payment obligations continue after his death, as an obligation of his estate." *Id.* at ¶¶ 7–8, 410 P.3d at 1273. The appellate court sided with the estate and found that there was no longer an obligation to continue the monthly payments posthumously. *Id.* at ¶ 8, 410 P.3d at 1273. Specifically, the appellate court found that the trial court erred because

> [The] premarital agreement entitled [the] wife to receive
> the monthly payments specifically "from [the husband],"
> not also from his estate after he had died. Likewise, the

> separation agreement expressly provide[d] that "Husband shall pay to the Wife" the monthly payments. Neither agreement said anything about the estate making the payments after [the] husband's death.

*Id.* at ¶ 18, 410 P.3d at 1275–76 (citation omitted). Hence, the "husband's personal obligation to pay ended when he died, absent a clear indication to the contrary, which . . . neither the premarital nor separation agreement provided." *Id.* at ¶ 21, 410 P.3d at 1276 (citations omitted).

Plaintiff maintains that we should disregard the ruling in *Williams,* in favor of the reasoning employed in *In re Marriage of Parsons*, an earlier opinion from a division of the Colorado Court of Appeals. 2001 COA 116, ¶ 1, 30 P.3d 868. In that case, the separation agreement provided that the husband was to pay monthly maintenance to the wife for ninety-six months. *Id.* at ¶¶ 1–2, 30 P.3d at 868. The wife remarried in the interim and the "husband filed a motion to terminate maintenance, alleging that termination was required . . . because the separate agreement did not specifically provide that maintenance would continue if wife remarried." *Id.* at ¶ 2, 30 P.3d at 868–69. The court disagreed with the former husband, finding that "the presence of a nonmodification clause is sufficient to overcome the statutory presumption that maintenance terminates upon the recipient's remarriage." *Id.* at ¶ 4, 30 P.3d at 869.

More recently, in 2021, when deciding *In re Marriage of Cerrone,* the Colorado Court of Appeals wrestled with a similar issue of whether a maintenance obligation

"ended automatically on [one party's] remarriage." 2021 COA 116, ¶ 1, 499 P.3d 1064. In that opinion, a division of the appellate court held that "the *Parsons* division diverged from the plain language of section 14-10-122(2)(a)(III) when it concluded that 'the presence of a non-modification clause'—standing alone—is sufficient to overcome the statutory presumption that the obligation to pay maintenance ends on the recipient spouse's remarriage." *Id.* at ¶ 18, 499 P.3d at 1067 (quoting *Parsons,* 2001 COA 116 at ¶ 4, 30 P.3d at 869). Further, the opinion offered that "we do not view as talismanic the terms 'contractual' and 'nonmodifiable.'" *Id.* at ¶ 19, 499 P.3d at 1067. Therefore, the court held "to avoid termination of maintenance by operation of law under section 14-10-122(2)(a)(III), a separation agreement or decree must include an 'express provision' that maintenance will continue even if the recipient spouse remarries." *Id.* at ¶ 20, 499 P.3d at 1067.

In view of the foregoing, under Colorado precedent, a split of authority exists. While panels of the North Carolina Court of Appeals are bound by decisions of predecessor panels, Colorado's Court of Appeals does not adhere to the same paradigm. *Compare In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."); *with* Colo. R. App. P. 49 ("Review in the supreme court . . . will be granted only when there are special and important reasons . . . [such as] a division of the court of appeals has rendered a decision in

conflict with the decision of another division of said court. . . .").  Although rarely encountered in our setting, this quandary is hardly novel in the context of federal court.  *See, e.g.*, *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938); *Food Lion*, 194 F.3d at 512; *Hatfield v. Palles*, 537 F.2d 1245 (4th Cir. 1976).

Akin to the matters addressed by the United States Court of Appeals for the Fourth Circuit in both *Food Lion* and *Hatfield*, the "process is more complicated here because [the] state's highest court has [not] applied its law to circumstances exactly like those presented in this case." *Food Lion,* 194 F.3d at 512.  "Thus, we must offer our best judgment about what we believe those courts would do if faced with [plaintiff's] claim[ ] today." *Id.* (citation omitted).  The Supreme Court of Colorado has held, "[w]hen construing a statute, courts must ascertain and give effect to the intent of the General Assembly . . . and must refrain from rendering judgments that are inconsistent with that intent.  To determine legislative intent, we therefore look first to the plain language of the statute." *State v. Nieto*, 2000 CO 689, ¶ 17, 993 P.2d 493, 500.  Therefore, we find it prudential to employ "the most fundamental semantic rule of interpretation"—the ordinary-meaning rule that "[w]ords are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69 (2012).  In the case *sub judice*, the plain language of Colorado's statute prescribes the general rule that the death of a party terminates an

obligation to pay future maintenance unless "otherwise agreed in writing or expressly provided in the decree. . . ." Colo. Rev. Stat. § 14-10-122(2)(a).

Applying the plain-meaning rule of statutory construction, we find sounder logic underlies the more temporally proximal cases of *Williams* and *Cerrone.* Therefore, we are compelled to the same result: defendant-estate no longer had an obligation to continue the monthly payments to plaintiff in light of the decedent's passing. Here, the Separation Agreement stated that decedent "shall pay 60[, later amended to 84,] consecutive monthly payments of $2,000 (two thousand dollars) to [plaintiff] as and for maintenance." Like the agreement in *Williams,* the provision only stated that decedent "shall pay," and did not provide that payments would continue posthumously. *See Williams* at ¶ 18, 410 P.3d at 1275–76. Also, by analogy, the agreement at issue here fails for reasons comparable to the one in *Cerrone*—the parties did not include an "express provision" that maintenance would continue upon the occurrence of an event listed in Colo. Rev. Stat. § 14-10-122(2)(a). *See Cerrone* at ¶ 20, 499 P.3d at 1067. Simply put, in absence of an express provision to the contrary, the Colorado Dissolution of Marriage Decree cannot be interpreted to conclude that maintenance obligations continue after death. Since plaintiff and decedent did not agree in writing to posthumous payments, that obligation terminated upon decedent's death under Colo. Rev. Stat. § 14-10-122(2)(a). Consequently, plaintiff's claim fails as matter of law under Rule 12(b)(6). *See Grich*, 228 N.C. App. at 589, 746 S.E.2d at

318 (noting that a complaint may be dismissed per Rule 12(b)(6) when the complaint, on its face, reveals that no law supports the claim).

Plaintiff's attempt to distinguish *Williams* and *Cerrone* is unavailing. Plaintiff argues that the facts in the present case are distinguishable from *Williams* "[b]ecause those contracts included different terms and clauses than does the Separation Agreement and the Amendment here[.]" While that may be so, plaintiff misconstrues the crux of the *Williams* holding—if the parties want posthumous maintenance payments, then they must contract for them. *Williams*, at ¶ 23, 410 P.3d at 1276 ("Accordingly, without a clear expression of intent to continue the payment obligation beyond husband's lifetime, the period that husband was obligated to pay, during which the amount of the payments was nonmodifiable, ended with his death."). Plaintiff's effort to discredit *Cerrone* also falls short. As discussed above, the text of Colo. Rev. Stat. § 14-10-122(2)(a) anticipates that "the death of either party" will terminate the obligation to pay future maintenance unless "agreed in writing *or* expressly provided in the decree." Colo. Rev. Stat. § 14-10-122(2)(a) (emphasis added); *see* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 116 (2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives."). The instrument at issue is a decree and there is no express provision to negate the statutorily presumed termination event. On account of Colo. Rev. Stat. § 14-10-122(2)(a)'s mandate and an application of the *Williams* and *Cerrone* decisions, plaintiff cannot interpret in North Carolina what

she could have bargained for in Colorado years ago.  Here, defendant-estate's duty to pay ended when the decedent passed away.  *See* Colo. Rev. Stat. § 14-10-122(2)(a).

Since we affirm the trial court's order on the ground discussed *supra*, we are not compelled to consider additional alternative grounds for dismissal.  *See, e.g.*, *State ex rel. Edmisten v. Tucker*, 312 N.C. 326, 357, 323 S.E.2d 294, 314 (1984) ("In view of our conclusion that the trial court correctly dismissed the complaint on [one ground] . . . as to all defendants, we need not address the trial court's alternative ground for dismissal of the complaint[.]"); *Bulloch v. N.C. Dep't of Crime Control & Pub. Safety*, 223 N.C. App. 1, 10, 732 S.E.2d 373, 380–81 (2012) ("[W]here a lower court's ruling is based on alternative grounds, a court on appeal need not address the second alternative ground where the appellate court determines the first alternative ground was correct[.]").

## IV.  <u>Conclusion</u>

Our *de novo* determination of the trial court's dismissal begins and ends with Colorado precedent.  Defendant-estate's obligation to pay plaintiff the outstanding $104,000 balance ended when decedent passed away.  The trial court's dismissal of plaintiff's complaint for failure to state a claim under Rule 12(b)(6) stands.

AFFIRMED.

Judges DILLON and CARPENTER concur.