23CA1766 Marriage of Trujillo 11-27-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1766
Douglas County District Court No. 21DR30592
Honorable Benjamin Figa, Judge

In re the Marriage of

Eric W. Trujillo, as the executor and personal representative of the estate of
Earnest R. Trujillo,

Appellee,

and

Ruth M. Trujillo,

Appellant.

APPEAL DISMISSED IN PART
AND JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Lipinsky and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

The Law Firm of Dennis A. Lacerte, Dennis A. Lacerte, Parker, Colorado; The
Law Office of William S. Schneider, LLC, William S. Schneider, Centennial,
Colorado, for Appellee

The Harris Law Firm PLLP, Katherine O. Ellis, Denver, Colorado, for Appellant

¶ 1    Ruth M. Trujillo (wife) appeals the district court's judgment dissolving her marriage with Earnest R. Trujillo (husband) and entering permanent orders allocating the marital estate and declining to award her maintenance. We dismiss the portion of the appeal concerning maintenance and affirm the judgment dividing the marital estate.

## I.    Background

¶ 2    The parties were married in 1971. In 2021, after husband experienced a number of health problems, wife petitioned the probate court for the appointment of a conservator for husband. A few days later, husband initiated the dissolution of marriage case. The conservatorship case was then dismissed.

¶ 3    While the dissolution case was pending, husband reported to the court that wife had withdrawn approximately $1.1 million from their joint account and deposited the money into her individual account. Wife admitted that she had withdrawn the funds. She explained that, since doing so, she had returned $513,000 to husband and used a similar amount to buy herself a new home. The court determined that wife had violated the mandatory temporary injunction imposed by section 14-10-107(4)(b)(I), C.R.S.

2024, and it directed her to provide financial documentation and a full accounting of the withdrawn funds. Wife submitted her documentation, and the court didn't enter further sanctions.

¶ 4 At the permanent orders hearing, wife asked for an equal allocation of the marital estate. But husband argued that he should receive a larger portion of the marital assets. He explained that he had contributed substantially to the acquisition of the marital assets, highlighting his employment earnings, his military disability payments, and a financial settlement related to his military service. He also highlighted that wife's violation of the temporary injunction had prevented them from accumulating additional investment income on their marital funds.

¶ 5 After the hearing, the court divided the $2.3 million marital estate by allocating about $1.4 million of the marital assets to husband and about $855,000 to wife. The court divided the marital debt by allocating to husband about $3,000 and wife about $14,500, which corresponded to the debts they had identified on their most recent respective sworn financial statements. The court then declined to award wife maintenance, finding that she hadn't made a timely request for it and that, in any event, she could meet

her reasonable needs with the significant financial resources allocated to her.

| Assets and Debts | Husband's Allocation | Wife's Allocation |
|---|---|---|
| Real Estate | $620,000 | $520,000 |
| Vehicles | $8,500 | $14,000 |
| Bank/Investment Accounts | $666,943 | $154,850 |
| Life Insurance | $40,000 (or $20,000) | |
| Furnishings | $2,000 | |
| Retirement Accounts | $125,616 | $166,186 |
| Debts | -$2,899 | -$14,553 |
| TOTAL | $1,460,160 (or $1,440,160) | $840,483 |

## II. Husband's Death

¶ 6 Husband died after the district court entered the judgment and wife initiated this appeal. The personal representative of husband's estate was substituted for him in this case. *See* C.A.R. 43(a)(1). We therefore clarify the scope of our review.

¶ 7 An appellate court may review a dissolution decree determining the parties' property rights even though one of the parties has died. *In re Marriage of Piper*, 820 P.2d 1198, 1200

3

(Colo. App. 1991). However, any obligation to pay maintenance is purely personal and, unless otherwise agreed to or ordered by the court, a maintenance obligation doesn't survive the death of the payor spouse. *Id.* at 1199-1200; *see* § 14-10-122(2)(a)(I), C.R.S. 2024. Thus, any decision we render on the court's ruling declining to award maintenance would have no practical legal effect after husband's death because the court can no longer impose a maintenance obligation. *See Piper*, 820 P.2d at 1199 (concluding that the appellate court didn't have jurisdiction to review the court's order denying the wife maintenance after the husband's death); *cf. In re Marriage of Wright*, 2020 COA 11, ¶ 24 ("[M]aintenance is based on the parties' financial circumstances at the time the order is entered . . . .").

¶ 8 We therefore dismiss the portion of wife's appeal concerning maintenance and review only her appeal relating to the court's allocation of the marital estate. *See Piper*, 820 P.2d at 1199-1200.

### III. Property Division

¶ 9 Wife contends that the district court reversibly erred by allocating to husband a disproportionate share of the marital estate. We aren't persuaded.

4

## A. Governing Legal Standards

¶ 10    The court has great latitude to equitably divide the marital estate in such proportions as it deems just. *See* § 14-10-113(1), C.R.S. 2024; *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. The property division must be equitable, but it doesn't have to be equal. *Wright*, ¶ 3. "The key to an equitable distribution is fairness," which depends on the facts and circumstances of each case. *In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo. 1988); *accord Wright*, ¶ 3.

¶ 11    To determine an equitable division, the court should consider "all relevant factors." § 14-10-113(1). Relevant factors may include, but aren't limited to, the parties' contributions to the acquisition of marital property, the value of property set aside to each party, the parties' economic circumstances, and the depletion of a party's separate property for marital purposes. *Id.* Determining how to weigh the relevant factors when determining an equitable allocation is within the court's sound discretion. *In re Marriage of Smith*, 2024 COA 95, ¶ 67.

¶ 12    We may not disturb a court's property division absent a showing that the court abused its discretion. *Medeiros*, ¶ 28. A court abuses its discretion when it acts in a manifestly arbitrary,

unreasonable, or unfair manner, or it misapplies the law. *Id.*; *see also Hall v. Moreno*, 2012 CO 14, ¶ 54 (explaining that, when reviewing a court's discretionary decision, we consider whether the decision fell within the range of reasonable options, not whether we would have reached a different result).

## B. Discussion

¶ 13 When determining the allocation of the marital estate, the district court acknowledged the applicable legal standard and then summarized the conflicting evidence. The court found that husband and the parties' son, who testified in support of husband, were "very credible." And it found that wife was "not as credible." The court explained that wife had made misrepresentations to the court, violated the temporary injunction during the case, and didn't fully disclose financial information to husband. In light of those credibility determinations, the court discussed the relevant factors under section 14-10-113.

¶ 14 The court found that the parties were married for over fifty years and that husband was the primary source of their financial resources during the marriage. *See* § 14-10-113(1)(a). The court explained that, in addition to his employment, husband contributed

6

the funds from his military disability benefits and a financial settlement he received relating to Agent Orange exposure. *See id.* The court acknowledged that wife also contributed as a homemaker, but it found that "on balance it was [husband] who contributed more" to the acquisition of their marital property. *See id.*

¶ 15 The court also found that, although husband's monthly income was more than wife's income, after the dissolution each party would have a debt-free residence. *See* § 14-10-113(1)(c). The court then allocated to husband the condominium where he was living, and it allocated to wife the home she purchased during the proceedings.

¶ 16 In addition, the court noted that husband's health had suffered due to the effects of his military service and that, for the past couple of years, he had been receiving full-time care from their son, who had moved into a second condominium owned by the parties, which was located close to husband's residence. *See* § 14-10-113(1). And the court considered as a relevant factor that wife had violated the temporary injunction and used a significant

7

amount of marital funds without husband's consent to buy her home.

¶ 17    Based on these facts and circumstances, the court divided the marital assets. It determined that its division, which allocated to husband about $1.4 million and wife the remaining $855,000, was fair and equitable.

¶ 18    Wife argues that the court's allocation was manifestly arbitrary, unreasonable, and unfair.  But the court weighed the relevant factors, and it made findings supported by the record explaining its decision.  *See Smith*, ¶ 67; *see also In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (recognizing that it is for the district court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn from the evidence).  We therefore may not set aside its determination.  *See Medeiros*, ¶ 28; *see also Hall*, ¶ 54.

¶ 19    In particular, husband testified that, while wife made significant contributions, he contributed "way more to the marital estate," and he confirmed that his Agent Orange settlement payments and military disability benefits helped them accumulate the marital assets.  The record also revealed that husband's

deteriorating health over the last decade warranted additional care and support. Husband had suffered a heart attack and a stroke, received a kidney transplant, was diagnosed with diabetes, experienced a lengthy hospitalization for COVID-19, and had his leg amputated.

¶ 20    Still, wife contests the court's finding that she violated the temporary injunction, arguing that the record doesn't support this finding. (She does not challenge the court's decision to consider this circumstance as a relevant factor when allocating the marital estate. *See* § 14-10-113(1).) Upon the filing of a dissolution petition, "a temporary injunction shall be in effect against both parties," restraining them from "transferring, encumbering, concealing, or in any way disposing of, without the consent of the other party or an order of the court, any marital property, except in the usual course of business or for the necessities of life." § 14-10-107(4)(b)(I)(A). Wife highlights that the temporary injunction was not in place when she withdrew the marital funds from their joint account because husband had not yet filed the dissolution petition. While that may be true, she didn't merely withdraw the marital funds. The evidence also showed that, after husband filed his

petition, wife took over $500,000 of those marital funds to buy a new home without husband's consent. Wife's conduct supports the court's finding that she violated the injunction. *See id.*

¶ 21 Wife also suggests that the court erred by saying that it "did not hear any evidence today from [wife] as to why she was not in violation of [the] temporary injunction." In support, she asserts that, before the hearing, she provided information to the court that gave a detailed accounting of the withdrawn marital funds. However, she fails to explain how providing that information renders the court's statement incorrect, particularly when the court didn't base its finding that she had violated the temporary injunction on her lack of accounting. *See In re Marriage of Drexler*, 2013 COA 43, ¶ 27 (recognizing that the appealing party bears the burden to explain the legal basis and provide supporting authority for a contention of error asserted on appeal).

¶ 22 To the extent wife suggests that the court incorrectly found that she didn't provide a full accounting of the withdrawn funds, we disagree. Although wife supplied financial information to the court before the hearing, the evidence at the hearing concerning the extent of her accounting conflicted. Husband said that she didn't

adequately account for the withdrawn funds, and wife's testimony was equivocal. The court made its finding after weighing the conflicting evidence, and we, therefore, may not set it aside. *See Thorburn*, ¶ 49; *see also In re Marriage of Evans*, 2021 COA 141, ¶ 45 ("We are not at liberty to re-evaluate the conflicting evidence and set aside findings supported by the record.").

¶ 23   Wife also generally asserts that the court's findings on each party's credibility doesn't explain the unequal allocation. However, the court's credibility findings informed its resolution of the conflicting evidence and its consideration of the relevant factors. Beyond her general assertion, wife doesn't develop this argument, and we decline to address it further. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 29 (declining to address undeveloped argument).

¶ 24   *In re Marriage of Singewald*, 535 P.2d 252 (Colo. App. 1975) (not published pursuant to C.A.R. 35(f)), on which wife principally relies, is distinguishable. In that case, the division reversed a property division because the district court had misapprehended the transaction creating a particular asset, resulting in an inequitable division. *Id.* at 253-54. Wife doesn't assert any

analogous mistake in this case. And, in any event, the validity of any property division turns on the relevant facts, which will of course differ from case to case.

¶ 25    In sum, we aren't persuaded that the court abused its discretion by ordering an unequal allocation of the marital estate. *See Wright*, ¶¶ 3, 10; *see also In re Marriage of Hunt*, 909 P.2d 525, 538 (Colo. 1995) ("[A]n appellate court must not disturb the delicate balance achieved by the [district] court in [its] division of property . . . unless there has been a clear abuse of discretion.").

## IV.   Disposition

¶ 26    We dismiss the portion of the appeal concerning the court's maintenance ruling and affirm the court's judgment allocating the marital estate.

JUDGE LIPINSKY and JUDGE SULLIVAN concur.